Sam Tate **DAVIS**, John David Davis and Bobby Howard Phillips, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 24313.

United States Court of Appeals Fifth Circuit.

Dec. 4, 1967.

Robert B. Thompson, Gainesville, Ga., for appellants.

No formal appearance has been filed for appellee.

Before RIVES, GOLDBERG and AINSWORTH, Circuit Judges.

RIVES, Circuit Judge.

The three appellants and two other co-defendants were indicted for violations of the internal revenue law relating to distilled spirits. The appellants were convicted on seven counts.[1] Each of the appellants was sentenced to imprisonment for 1 year on Count 6 to run concurrently with his sentences on the other six counts, on each of which his sentences were also to run concurrently, but on which their sentences varied as follows: Sam Tate Davis, 3 years; John David Davis, 2½ years; Bobby Howard Phillips, 2 years. Each of the appellants urges one single ground of error, viz: the district court erred in denying his motion for judgment of acquittal as to each count because the evidence was insufficient to sustain the verdict.

During the period from December 1 to December 7, 1965, Special Investigators of the Internal Revenue Service, Alcohol and Tobacco Tax Unit, conducted an in-vestigation in Franklin County, Georgia. On the latter date, between 11:00 o'clock P.M. and midnight, search warrants were simultaneously executed on a chicken house on the Dobbs farm about 3 miles south of Carnesville, Georgia, and on a red dwelling house about 300 yards off Georgia Highway 59 and 5 miles northeast of Carnesville. At the chicken house on the Dobbs farm, there was seized a large unregistered distillery, 400 gallons of illicit whiskey, 15,000 pounds of sugar, 13,600 gallons of mash and various other materials and apparatus appurtenant to the distillery. At the red dwelling house, some seven or eight miles from the distillery, there was seized 9,938 ½-gallon glass jars, 40 pounds of sugar, 24 100-pound bags of barley malt, one gallon of nontaxpaid whiskey, 150 feet of hose, much of which was filled with wet mash, and various other items. The two co-defendants were arrested at the site of the distillery. The three appellants were arrested at the red dwelling house.

Each of the appellants testified in his own behalf. Phillips testified that he had rented the red dwelling house from some unknown man the week before the raid and had intended to work for some construction company out of South Carolina, the name of which he had forgotten, and to move his family after he got the work established. He was to pay either $15.00 or $20.00 monthly for rent. The presence of the fruit jars and other materials he explained as follows:

"A. Well, there was a gentleman, which I was needing some money, and he asked me to put some stuff in there. He said there wouldn't be—he didn't think there would be nothing wrong

[1]. Count 1 charged conspiracy, 18 U.S.C. § 371; Count 2, possession, custody and control of an unregistered distillery, 26 U.S.C. § 5179(a) and § 5601(a); Count 3, carrying on the business of a distiller without giving bond, 26 U.S.C. § 5173 and § 5601(a); Count 4, carrying on the business of distiller with intent to defraud, 26 U.S.C. § 5602; Count 5 did not include the appellants; Count 6, delivering raw materials to an unregistered distillery, 26 U.S.C. § 5180 and § 5681(c); Count 7, possession of distilled spirits in unstamped containers, 26 U.S.C. § 5205(a)(2) and § 5604(a); Count 8, removing, depositing and concealing nontaxpaid distilled spirits, 26 U.S.C. § 7206(4). Count 6 carried a maximum sentence of one year. On each of the other six counts, the maximum sentence prescribed was five years.

with it, and I told him it would be all right, and he said he would give me $25 a week, which I was needing the money and I let him put it in there."

The two Davises (not related) denied any knowledge or complicity in the distillery operation. They were looking for a hunting dog which had been left with a man who lived near the red dwelling. The dog had got loose and they were told that it might be at the red dwelling, and they walked up there to inquire. It was cold and Phillips invited them inside to warm. The timing of their visit was most unfortunate, for within just a few minutes the officers arrived.

During the week that they had kept the chicken house on the Dobbs farm and the red dwelling house off Highway 59 under observation, the officers had witnessed a considerable secretive traffic between the two locations. A distinctively marked ton-and-a-half GMC truck had several times been loaded with objects carried from the red dwelling house by unidentified persons, three of whom met the general descriptions of the three appellants. The truck followed by a pickup truck would leave the dwelling house in the dark; the lights of the vehicles would be turned on after they reached the highway. The same heavily loaded truck would later be observed at or near the chicken house. Of the three appellants, only John David Davis was observed during that week at the Dobbs farm. At the time of the seizure, all three appellants were observed loading cases of jars on the ton-and-a-half truck. On two other nights, three persons meeting their general descriptions, but who could not be positively identified, were seen so doing. There were other probative circumstances which are omitted for the sake of brevity.

The applicable principles of law are well settled. When concurrent sentences are imposed upon conviction on several counts for less than the maximum punishment authorized by statute for conviction under any one count, the judgment must be upheld if conviction upon any of the counts is sustainable.[2] "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680. In criminal cases, "substantial evidence" means such relevant evidence as a reasonable mind might accept to support a conclusion of guilt beyond a reasonable doubt.[3] One test to be applied by the court in ruling on a motion for judgment of acquittal in circumstantial evidence cases is whether the jury might reasonably find that the evidence excludes every reasonable hypothesis except that of guilt.[4]

We have carefully read and studied the evidence in this case. Reviewing that evidence under the applicable principles of law, we are convinced that there was sufficient evidence to sustain the verdict of the jury. The judgment is therefore

Affirmed.

2. Claassen v. United States, 1891, 142 U.S. 140, 146, 12 S.Ct. 169, 35 L.Ed. 966; Pinkerton v. United States, 1946, 328 U.S. 640, 642, 66 S.Ct. 1180, 90 L.Ed. 1489; Barenblatt v. United States, 1959, 360 U.S. 109, 115, 79 S.Ct. 1081, 3 L.Ed. 2d 1115; Kahm v. United States, 5 Cir. 1962, 300 F.2d 78, 81, 82.

3. Riggs v. United States, 5 Cir. 1960, 280 F.2d 949, 953, 954.

4. Riggs v. United States, supra note 3, at 955.