633 P.2d 355

**STATE of Arizona, Appellee,**

v.

**Raymond Curtis TISON, Appellant.**

**No. 4624.**

Supreme Court of Arizona,
In Banc.

July 9, 1981.
Rehearing Denied Sept. 10, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Bruce M. Ferg, David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Boyd T. Johnson, Coolidge and Alan M. Dershowitz, Cambridge, Mass., for appellant.

Alan M. Dershowitz, Cambridge, Mass., and Alice L. Bendheim, Phoenix, for amici curiae American Civil Liberties Union Foundation, Arizona Civil Liberties Union, National Council of the Churches of Christ in the United States, The American Baptist Churches in the U. S. A.

STRUCKMEYER, Chief Justice.

This is an appeal by Raymond Curtis Tison from judgments of guilty to four counts of murder in the first degree and sentences of death thereon, two counts of armed robbery, three counts of kidnapping, and one count of theft of a motor vehicle. It is a companion case to that of *Ricky Wayne Tison*, decided this date, 129 Ariz. 526, 633 P.2d 335. Judgments and sentences affirmed.

On July 30, 1978, appellant and his two brothers, Ricky and Donald Tison, visited the Arizona State Prison at Florence, Arizona. Appellant went to the north annex, ostensibly to see his father, Gary Tison, who was serving a life sentence for murder. Gary Tison's cellmate, Randy Greenawalt, another convicted murderer, was close by in the control room. Appellant's two brothers, Ricky and Donald Tison, while in the yard office of the annex, took out guns which

had been concealed in an ice chest. Greenawalt was given a gun and he passed it to Gary Tison. The guards who were present and some prison visitors were locked in a storage closet. The Tisons, with Greenawalt, then left the prison in an escape.

On August 6, 1978, an abandoned Lincoln Continental was found near Quartzsite, Arizona. The body of John Lyons was found near the vehicle and the bodies of Donnelda Lyons, his wife, and their twenty-two-month-old son, Christopher, were found inside the car. Another body, that of Theresa Tyson, the Lyonses' niece, was found one-fifth of a mile west of the vehicle. It was established that the Lyonses had left their home in Yuma, traveling toward Las Vegas, Nevada, in a late model Mazda on the evening of July 31, 1978. This vehicle was eventually found partially buried and covered with pine tree branches near Flagstaff, Arizona.

In the early morning hours of August 11, 1978, appellant, together with Ricky Tison and Randy Greenawalt, was captured near Casa Grande, Arizona after a high speed chase. They attempted to run a roadblock in a stolen Ford van. All were armed with weapons. During the capture, Donald Tison, the driver of the van, was shot in the head. Gary Tison fled into the desert and was found dead a few days later.

Appellant was tried along with Greenawalt and Ricky Tison in Pinal County, Arizona for crimes occurring at the prison and at the roadblock. Appellant was convicted of seventeen counts of assault with a deadly weapon, possession of a stolen motor vehicle, unlawful flight from a pursuing law enforcement vehicle, and aiding and assisting an escape. These convictions were affirmed by this Court in *State v. Greenawalt, et al.* on the 24th day of February, 1981, 128 Ariz. 388, 626 P.2d 118 (1981).

The convictions being upheld here resulted from a trial in Yuma County, conducted immediately following the trials first of Greenawalt and then of Ricky Wayne Tison. Greenawalt's convictions for murder, armed robbery, kidnapping and theft of a motor vehicle and sentences were affirmed

by this Court in *State v. Greenawalt*, 128 Ariz. 150, 624 P.2d 828 (1981). Ricky Wayne Tison's appeals from convictions for similar offenses were resolved this day in Cause No. 4612.

Appellant has presented twenty-two assignments of error, most of which do not differ from those asserted and resolved in the companion case of *State v. Ricky Wayne Tison,* 129 Ariz. 526, 633 P.2d 335 (1981). The similarity of the issues in the two cases was recognized by counsel for Raymond Curtis Tison in his motion to consolidate oral arguments:

> "The two cases have a number of issues in common, including all of the conspiracy issues, felony-murder issues, vicarious liability questions, and death penalty issues, over which separate oral argument would be redundant."

We therefore find it unnecessary to reconsider the following issues which were discussed and resolved in *State v. Ricky Wayne Tison,* 129 Ariz. 526, 633 P.2d 335, supra: (1) that the plea agreement should be specifically enforced against the State, since it improperly compelled the appellant to withdraw from the agreement; (2) that an expert should have been appointed to conduct a public opinion survey; (3) that the trial court erred in giving the conspiracy instructions when the prosecution relied on the theory of aiding and abetting to impose criminal liability; (4) that the trial court erred in the conspiracy instructions given because Arizona law does not recognize vicarious liability for the acts of a co-conspirator; (5) that it was fundamental error for the trial court to fail to instruct the jury on the elements of the crime of conspiracy; (6) that the trial court erred by failing to instruct on the elements of escape from legal custody and avoidance or prevention of lawful arrest contained in the felony murder statute; (7) that the trial court erred in failing to instruct on termination of a felony underlying application of the felony murder rule; (8) that the trial court erred in failing to provide transcripts of co-defendant Randy Greenawalt's trial, see *State v. Greenawalt,* 128 Ariz. 150, 624

P.2d 828 (1981); (9) that the sentencing judge erred in his interpretation of the aggravating circumstances contained in A.R.S. § 13–454(E) (now § 13–703(F)); (10) that the death penalty constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution; (11) that the decision in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), is unconstitutional because the mitigating portions of the statute are not severable from the remainder of the statute; (12) that *State v. Watson*, supra, constitutes a prohibited exercise of legislative power in violation of Article III of the Constitution of Arizona; (13) that *State v. Watson*, supra, constitutes a judicial enactment of a bill of attainder prohibited by Article I, Section 10 of the United States Constitution; (14) that the death penalty as re-created by *State v. Watson*, supra, will be imposed wantonly, arbitrarily and freakishly because it contains no ascertainable standards for the sentencing body to measure the relative weights of the aggravating and mitigating circumstances; (15) that the death penalty statute improperly allocates the burden of proof in requiring the defendant to prove the existence of mitigating factors and not requiring the prosecution to establish aggravating circumstances beyond a reasonable doubt; and (16) that the imposition of the sentence of death upon an individual convicted under a felony murder theory without evidence that he was the actual perpetrator of the homicide or intended that the victim should die is grossly disproportionate and violates the prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution.

Our resolution here of the above enumerated issues is identical to their resolution in *State v. Ricky Wayne Tison*, supra.

In addition, appellant urges that as a result of the pretrial publicity, the trial court erred in denying his motions for change of venue, change of venire, continuance, sequestration of the jury and for individual voir dire. We will examine these assertions in the light of the established law that the determinations rest within the sound discretion of the trial court and will not be disturbed on appeal lacking a clear showing of abuse of discretion and resulting prejudice. *State v. Ricky Wayne Tison*, supra; *State v. Greenawalt, et al*, 128 Ariz. 388, 626 P.2d 118 (1981); *State v. Greenawalt*, 128 Ariz. 150, 624 P.2d 828 (1981).

█ It is appellant's position that pretrial publicity had so "permeated the community" and was so prejudicial that a change of venue was necessitated. He points to the fact that every member of the jury panel had some knowledge of the case.

█ In *State v. Schmid*, 107 Ariz. 191, 484 P.2d 187 (1971), this Court recognized that prior knowledge concerning a case by all of the empaneled jurors was an important factor for the trial judge to consider in ruling on the motion for change of venue, but that standing alone it did not demonstrate such prejudice as would necessitate a change of venue. The grounds for change of venue require the movant to show that pretrial publicity has the probable effect of precluding a trial by fair and impartial jurors. *State v. Ricky Wayne Tison*, supra; *State v. Greenawalt*, 128 Ariz. 150, 624 P.2d 828 (1981). Nothing approaching such a showing was made by appellant. Of the 50 prospective jurors that needed to be called to obtain a panel of 34, 16 expressed an unqualified opinion as to the guilt of the accused. These prospective jurors were excused and the remaining members of the panel, even though possessing some knowledge of the case, stated that they could try the case on the evidence presented in court. It is unnecessary for a juror to be totally ignorant of the facts of a case so long as he can lay aside his impressions or opinions and render a verdict based on the evidence before him. *State v. Smith*, 123 Ariz. 231, 599 P.2d 187 (1979). While the assurances of impartiality by the jurors are not dispositive on the question of actual prejudice toward the defendant, in the absence of any showing of the probability of an unfair trial we will not upset the trial judge's ruling on

the motion for change of venue. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). See *State v. Greenawalt, et al.*, 128 Ariz. 388, 626 P.2d 118, 122 (1981).

■ The appellant asserts that error was committed because the jury was not sequestered. He believes this procedure should have been adopted in order to prevent the jury from being exposed to the "massive publicity surrounding the trial." We do not agree. The record does not reflect the presence of such publicity, nor does it show jury misconduct or that the jury failed to follow the admonitions given by the trial judge.

■ Appellant claims the trial court erred in failing to conduct individual voir dire. The primary responsibility for the voir dire examination rests with the trial judge. See *State v. Rickey Wayne Tison*, supra, but if good cause appears, the court may permit counsel to examine an individual juror. Rule 18.5, Rules of Criminal Procedure, 17 A.R.S. This opportunity to ask questions of individual jurors was afforded counsel for appellant and he declined to do so. We will not disturb the trial court's selection of the jury in the absence of a showing that a jury of fair and impartial jurors was not chosen.

Appellant urges that he was denied a fair trial guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and characterized the pretrial publicity as "unchecked and irresponsible journalism" which created a carnival-like atmosphere similar to the one condemned in *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). He then points to specific items of media coverage which he believes reflect the extreme prejudicial conditions under which this trial was conducted. He complains of the press coverage concerning his involvement in the prison breakout of Gary Tison and Randy Greenawalt, his initial agreement to plead guilty and receive a life sentence in exchange for his testimony against co-defendant Greenawalt, his alleged confession, the physical evidence connecting appellant to the deaths of the Lyons family and Theresa Tyson, the listing of the names of witnesses in the Greenawalt trial who would most probably testify at appellant's trial, and the opinions of appellant's guilt in editorials and letters to the editor in various newspapers.

■ In *State v. Schmid*, 109 Ariz. 349, 509 P.2d 619 (1973), supra, we recognized that certain publicity similar to that described above could create prejudice to the extent of precluding the possibility of a fair trial. But to presume prejudice, outrageous circumstances must be present showing the lack of solemnity and sobriety appropriate to a judicial proceeding. *State v. Greenawalt*, 128 Ariz. 150, 624 P.2d 828 (1981). Upon reviewing the record, we find nothing resembling such extreme circumstances. See *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).

We now turn to an examination of the actual publicity in the case to ascertain, first, if it reached prospective jurors and, second, if it was so prejudicial that the jurors could not have set it aside. *State v. Greenawalt et al*, 128 Ariz. 388, 626 P.2d 118 (1981). A review of the nature of the publicity and the relative difficulty in selecting the jury can indicate the presence of actual prejudice. *Id.* It cannot be disputed that appellant's activities, together with the other Tisons', received massive publicity from the break out of the state prison until their capture near Casa Grande, some twelve days later. Thereafter, the Tisons and Greenawalt received less attention in the press. The only inflammatory articles which could possibly be considered prejudicial were two appearing in the Arizona Republic, a newspaper published in Phoenix, Arizona, nearly 200 miles from Yuma, the site of the trial.

On Wednesday, August 8, 1978, an editorial appeared in the Arizona Republic, entitled "Society Has Had It!" The tenor of the editorial is set in the first five sentences, which read:

"BLEEDING–HEART critics of the death penalty peg their case on the vacuous assertion that capital punishment is no deterrent to heinous crimes.

Let them come down from their lofty perches and tell that to the survivors of Marine Corps Sgt. John H. Lyons, 24, his wife, Danellda [sic], 23, and their son Christopher, 22 months.

They were found beside a highway near Quartzsite, riddled with pellets from repeated shotgun blasts.

Police are almost certain they were gunned down by two escaped Arizona prison inmates, Gary Tison, 43, and Randy Greenawalt, 28.

Now how does death penalty deterrence figure in this crime?"

On Wednesday, August 16, 1978, a column by Paul Dean of the Arizona Republic commenced in this fashion:

"The voice of the people is a towering yell.

More than 300 letters and telephone calls to me and to the editors of this newspaper have formed an angry appeal for protection from Greenawalt and the Tisons and the bestiality they are charged with performing, may be continuing and could inspire others."

It was established that some of the prospective jurors read the Arizona Republic. These newspaper articles, however, appeared approximately six months prior to the date of trial. The ease with which a jury was selected strongly tends to suggest that publicity-caused prejudice did not extensively pervade the community nor influence jurors to the point of prejudicing appellant. While 16 of the 50 prospective jurors acknowledged that they were prejudiced against appellant, many were unaware of statements attributed to the appellant which had the greatest potential for the creation of jury prejudice. The circumstances were such that we do not find actual prejudice permeated the jury panel to the extent that appellant was deprived of a fair trial.

For similar reasons the court did not err in denying appellant's motions for change in the venire and for a continuance of the trial.

The appellant argues that the evidence presented by the State was not sufficient to support convictions for armed robbery, kidnapping and theft of a motor vehicle.

On appeal, this Court will not engage in re-weighing the evidence. *State v. Brown*, 125 Ariz. 160, 608 P.2d 299 (1980); *State v. Long*, 121 Ariz. 280, 589 P.2d 1312 (1979); *State v. Acree*, 121 Ariz. 94, 588 P.2d 836 (1978). It will be viewed in the light most favorable to sustaining the conviction and all reasonable inferences will be resolved against a defendant. *State v. Verdugo*, 109 Ariz. 391, 510 P.2d 37 (1973). The test to be applied is whether there is substantial evidence to support a guilty verdict. *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976). In the recent case of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), it was held that due process requires a court to utilize as the standard of review whether there was sufficient evidence that a rational trier of fact could have found guilt beyond a reasonable doubt. The Court said:

"After *[In re] Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368] the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' *Woodby v. INS*, 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362. Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S.Ct. 1620 [1624–25], 32 L.Ed.2d 152. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has

been found guilty of the crime charged, the fact-finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." 443 U.S. 307, 99 S.Ct. 2781, at 2789–2790, 61 L.Ed.2d 560. (Footnotes omitted.) (Emphasis in original.)

In Arizona, the substantial evidence test applied to reviews on appeal is consistent with the constitutional principles enunciated in *Jackson v. Virginia*, supra. The manner in which we have defined the term "substantial evidence" supports this conclusion. We have said it means " * * * more than a scintilla and is such proof as a reasonable mind would employ to support the conclusion reached. It is of a character which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed. If reasonable men may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial." *State v. Bearden*, 99 Ariz. 1, 4, 405 P.2d 885 (1965). (Citations omitted.) This approach equates with the mandate in *Jackson* requiring the reviewing court to find that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. See *State v. Robinson*, 288 N.W.2d 337 (Iowa 1980). See also *Davis v. United States*, 385 F.2d 919 (5th Cir. 1967). Other jurisdictions with a standard of review similar to our own have reached the same conclusion. See *People v. Johnson*, 26 Cal.3d 557, 606 P.2d 738, 162 Cal. Rptr. 431 (1980); *State v. Lagasse*, 410 A.2d 537 (Me.1980); *Wilkins v. State*, 609 P.2d 309 (Nev.1980); *Hauger v. State*, 405 N.E.2d 526 (Ind.1980); *State v. Robinson*, supra; *People v. Calvaresi*, 600 P.2d 57 (Colo.1979); *State v. Brown*, 80 N.J. 587, 404 A.2d 1111 (1979); *State v. Atkins*, 261 S.E.2d 55 (W.Va.1979), cert. denied, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980). Those jurisdictions which have not

specifically examined their standard in the light of the holding in *Jackson* have embraced it as a new standard for reviewing the sufficiency of evidence. See *State v. Filson*, 101 Idaho 381, 613 P.2d 938 (1980); *People v. McDonald*, 409 Mich. 110, 293 N.W.2d 588 (1980); *State v. Letterman*, 603 S.W.2d 951 (Mo.App.1980); *State v. Hardy*, 419 A.2d 398 (N.H.1980); *State v. Harris*, 288 Or. 703, 609 P.2d 798 (1980); *Young v. State*, 407 A.2d 517 (Del.1979); *Moore v. State*, 151 Ga.App. 120, 258 S.E.2d 917 (1979); *State v. Voiles*, 226 Kan. 469, 601 P.2d 1121 (1979); *State v. Abercrombie*, 375 So.2d 1170 (La.1979); *State v. Rusk*, 289 Md. 230, 424 A.2d 720 (1981); *State v. Barbour*, 43 N.C.App. 143, 258 S.E.2d 475 (1979); *Holt v. State*, 591 S.W.2d 785 (Tenn.Cr.App. 1979). Our review function will therefore be concerned with whether there exists substantial evidence from the entire record from which a rational trier of fact could have found guilt beyond a reasonable doubt.

■ Appellant was held responsible for these crimes through the application of A.R.S. § 13–139 (now A.R.S. § 13–301). Liability as a principal is predicated upon proof that a defendant was concerned in the commission of a crime whether directly committing the crime or aiding and abetting its commission. Aiding and abetting presupposes active participation in the offense or advice or encouragement in the commission and a corresponding intent to facilitate the perpetration. *State v. Bearden*, supra.

The evidence introduced by the prosecution clearly supports the appellant's convictions for armed robbery, kidnapping and theft of a motor vehicle under the aiding and abetting theory of criminal responsibility. While there was no direct testimony that appellant actively participated in the commission of these crimes, there was ample circumstantial evidence from which the jury could have reasonably inferred that the appellant had assisted in their commission.

Appellant's fingerprint was found on the door release button of the Lincoln Continental, where two of the victims' bodies were found, thereby strongly suggesting that he was present at the scene of the homicides. Although a defendant's presence at the time and place of the crime in the absence of preconcert does not establish guilt as an aider, abettor or principal, *State v. Hernandez*, 112 Ariz. 246, 540 P.2d 1227 (1975); *State v. Sims*, 99 Ariz. 302, 409 P.2d 17 (1965), cert. denied 384 U.S. 980, 86 S.Ct. 1880, 16 L.Ed.2d 691 (1966), an intent to engage in the criminal venture may be shown by the relationship of the parties and their conduct before and after the offense. *State v. Beard*, 107 Ariz. 388, 489 P.2d 25 (1971); *State v. Villegas*, 101 Ariz. 465, 420 P.2d 940 (1966); *State v. Parker*, 121 Ariz. 172, 589 P.2d 46 (App.1978).

It is clear that appellant and his brothers were intimately engaged in a scheme designed to free their father from imprisonment. It can be reasonable to infer that their goal did not change from the time of the initial active assistance in breaking out of the prison through their capture twelve days later. The uncontradicted evidence established that appellant, along with his brother Ricky, made the arrangements with their uncle, Joe Tison, to obtain the automobile and various weapons which were used in the prison breakout. Appellant actively participated in the escape by bringing weapons into the trustee control annex, by holding prison guards and others at gunpoint, and fleeing in the company of his father, his brothers and Greenawalt.

The testimony of a Wenden, Arizona store clerk established that appellant was in Yuma County of August 1, 1978, at a time shortly after the homicides were committed. He and his brothers purchased silver spray paint which was used to disguise the Lyonses' stolen Mazda near Flagstaff. On August 2, 1978, appellant was seen in Flagstaff near the location of the partially buried, stolen Mazda. Finally, on August 11, 1978, appellant, together with Greenawalt and Ricky Tison, were captured after a high speed chase near Casa Grande. In the light of this evidence, it is reasonable for the jury to have inferred that appellant was not only present at the scene of the crimes, but willingly participated in the doing of whatever was necessary to complete the escape and to prevent capture. Appellant had eleven days after the breakout to disassociate himself from further participation in the criminal venture, but he did not. The jury could have readily concluded beyond a reasonable doubt that appellant was more than an abettor but was, rather, a direct participant in commission of the robbery, kidnapping and theft.

Finally, evidence of the appellant's flight supports an inference that the appellant was guilty of the offenses. He did not simply leave the scene of the crimes, for this, alone, would not support an inference of guilt. See *State v. Ceja*, 113 Ariz. 39, 546 P.2d 6 (1976), *appeal after remand* 115 Ariz. 413, 565 P.2d 1274, cert. denied 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). Rather, appellant and his companions repeatedly changed motor vehicles and sought to conceal the change by abandoning the Lincoln some distance off the highway, camouflaging the Mazda with paint and pine branches, and by abandoning at a Chevrolet dealership in Colorado the four-wheel-drive pickup obtained in Flagstaff. At the roadblock in Pinal County, Arizona, appellant, to avoid being apprehended, ran into the desert with Greenawalt and his brother Ricky. Flight to avoid capture is circumstantial evidence of the guilt of an accused. *State v. Sorensen*, 104 Ariz. 503, 455 P.2d 981 (1969).

The circumstantial evidence when examined as a whole did provide the jury with sufficient evidence from which it could have found appellant guilty beyond a reasonable doubt of armed robbery, kidnapping and theft. The lack of direct evidence of guilt does not preclude such a conclusion since a criminal conviction may rest solely upon proof of a circumstantial nature, *State v. Carriger*, 123 Ariz. 335, 599 P.2d 788 (1979), cert. denied 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 736 (1980). It is unnecessary for the prosecution to negate every

conceivable hypothesis of innocence when guilt has been established by circumstantial evidence. *State v. Olivas*, 119 Ariz. 22, 579 P.2d 60 (App.1978).

■ The evidence at Raymond's trial relating to the location of the bodies and wounds was similar to that introduced at Ricky's trial. For the reasons set forth in *State v. Ricky Wayne Tison* (No. 4612), supra, we are not convinced "a grave risk of death" was created to others, and hold here, as we did there, that the aggravating circumstance to be found in A.R.S. § 13–454(E)(3) does not apply.

The aggravating circumstance to be found in A.R.S. § 13–454(E)(5) is, however, clearly established. The bodies of the victims were in and around the Lincoln Continental which had been used by appellant and his companions in the escape. After its abandonment, they left the scene of the homicides in the Lyonses automobile. Considering all the facts, the conclusion is justified that the homicides were committed to secure a vehicle with which to continue their flight.

We agree with the trial judge's finding that the murders were "committed * * * in an especially heinous * * * or depraved manner", A.R.S. § 13–454(E)(6). One of the victims was a twenty-two-month-old child held in the arms of his mother. We reject the appellant's argument that this aggravating circumstance can be found only if he actually committed the murders. Appellant is in effect saying that since he did not personally pull the trigger of the guns used to commit the homicides, he cannot be held responsible for committing the offenses in an especially heinous, depraved manner.

As in the case of Ricky Tison, the trial judge found in mitigation of the offenses appellant's age, his minimal prior criminal activity, and that his convictions were based on the felony murder rule, former A.R.S. § 13–452. Appellant argues mitigation also exists in that he was strongly manipulated by his father, Gary Tison, pointing to the psychological reports on his mother and himself.

The psychologist did find a "very subtle sense of emotional manipulation on the part of" appellant's father, Gary Tison, which may have contributed in part to appellant's "amoral and somewhat antisocial development * * *." The psychologist concluded appellant "was not, in my opinion, operating under any irresistible impulse or irresistible urge" and did not conclude that appellant was under undue influence or duress.

Because the law is egalitarian, all persons are held accountable for the results of their conduct, it being presumed that all possess a free will. See Dressler, The Jurisprudence of Death by Another: Accessories and Capital Punishment, 51 U.Col.L.Rev. 17 (1979). Even though Gary Tison had significant influence with appellant, the evidence does not support the notion that appellant's will was overwhelmed or that appellant was anything other than a willing participant in the escape and the subsequent events. The sentencing judge did not find Gary Tison's influence or "subtle * * * manipulation" to be "sufficiently substantial to call for leniency." Nor do we.

■ Neither do we find the letters written on behalf of appellant, to the effect that he was essentially a peaceful person, of much value in light of the evidence that appellant exhibited his willingness to use force and violence at the time of the prison breakout and on subsequent occasions by violent criminal conduct. Even the psychological report offered in mitigation revealed appellant's potential for violence:

> "Raymond * * * felt almost certainly that if they became involved with legal authorities or were near capture that a shooting incident would occur. He stated that in terms of innocent civilians being injured that it was most unfortunate but that his father was in charge. His father was running it like 'a military operation and there were no survivors—you know, that sort of thing—no witnesses.' "

Appellant points to his limited participation in the murders. To prove his limited participation, he joined with Ricky Tison in arguing that Ricky's statement showed that

neither he nor Ricky engaged in the actual shooting nor did they intend the deaths of the victims. In upholding the sentence and conviction of Ricky Tison, we said as to both brothers that the non-participation in the shooting was not controlling since both took part in the robbery, the kidnapping, and were present assisting in the detention of the Lyonses and Theresa Tyson while the homicides were committed.

The mitigating circumstances when considered separately and collectively are not sufficiently substantial to call for leniency.

■ Appellant complains that he did not receive a fair trial because he was denied effective assistance of counsel. Since *State v. Kruchten*, 101 Ariz. 186, 417 P.2d 510 (1966), *cert. denied* 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed.2d 687, (1967), the standard in Arizona has been whether counsel was so ineffective that the proceedings were reduced to a farce, sham or mockery of justice. Recently, in *State v. Williams*, 122 Ariz. 146, 593 P.2d 896, we recognized that many jurisdictions have discarded the farce, sham or mockery of justice test and have adopted the reasonably effective assistance of counsel standard. We have not adopted the reasonably effective assistance of counsel as the test. Nevertheless, after examining the record, we find no indication that trial counsel's efforts were inadequate judged by either standard. See *State v. Moreno*, 128 Ariz. 257, 625 P.2d 320 (1981); *State v. Flewellen*, 127 Ariz. 342, 621 P.2d 29 (1980).

■ The burden of establishing the ineffectiveness of trial counsel is upon a claimant, *State v. Pacheco*, 121 Ariz. 88, 588 P.2d 830 (1978); see *State v. Watson*, 114 Ariz. 1, 559 P.2d 121 (1976), and proof of ineffectiveness must be a demonstrable reality not merely a matter of speculation. See *State v. Daniel*, 25 Ariz.App. 592, 545 P.2d 440 (1976); *People v. Stephenson*, 10 Cal.3d 652, 517 P.2d 820, 111 Cal.Rptr. 556 (1974). Moreover, errors in trial tactics or strategy *per se* do not constitute inadequate representation. *State v. Flewellen*, supra; *State v. Dippre*, 121 Ariz. 596, 592 P.2d 1252 (1979); *State v. Farni*, 112 Ariz. 132, 539 P.2d 889 (1975).

■ Appellant asserts that his trial counsel inadequately cross-examined the witnesses for the State. But, as the State points out, counsel for appellant did engage in cross-examination of several witnesses, exposing inconsistencies in their testimony. In hindsight, we see no indication that the questioning of the State's witnesses was inadequate. But were it otherwise, the manner in which cross-examination is conducted is a tactical decision to be made by the lawyer. See Standard 4–5.2, A.B.A. Standards for Criminal Justice. The method utilized is not indicative of inadequate representation. See *State v. Farni*, supra.

■ Appellant claims that counsel's "failure to fully argue his case to the jury at the conclusion of the trial" shows ineffective representation. Counsel did argue that guilt had not been proven beyond a reasonable doubt in the light of the failure of the State to prove the extent of appellant's participation in the homicides. The failure to engage in a lengthy closing argument does not necessarily show incompetence, since silence by trial counsel may be the most effective trial tactic. See *State v. Martinez*, 19 Ariz.App. 417, 508 P.2d 82, *cert. denied* 414 U.S. 1027, 94 S.Ct. 456, 38 L.Ed.2d 320 (1973).

■ Appellant asserts that it was error for counsel to fail to individually examine prospective jurors. Appellant's argument overlooks the fact that the questioning carried out by the trial judge could have been adequate in counsel's judgment. Moreover, the decision to ask additional questions may be in part predicated on strategy and, hence, one which rests peculiarly within the province of counsel. The failure to ask unnecessary questions is not indicative of ineffective representation. See *Gustave v. United States*, 627 F.2d 901 (9th Cir.1980).

■ Finally, the appellant asserts that he received only a minimal defense. He does not point out, however, what more could have been done which would support

his claim. Considering the record of appellant's trial as a whole and the prosecution's evidence, we do not believe that counsel was ineffective as an attorney or that he presented a lackluster defense. If the assertion of ineffective assistance of counsel on the grounds of a minimal effort is made, the record should establish where further effort would have been to a defendant's advantage. See *State v. Rackley*, 106 Ariz. 424, 477 P.2d 255 (1970).

Judgments and sentences affirmed.

HOLOHAN, V. C. J., and HAYS, CAMERON and GORDON, JJ., concur.