NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

ANGEL JAMES MORENO, *Appellant.*

No. 1 CA-CR 13-0177
FILED 07-17-2014

---

Appeal from the Superior Court in Maricopa County
No.  CR 2011-121921-002
The Honorable Carolyn K. Passamonte, Judge *Pro Tem*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry J. Adams
*Counsel for Appellant*

Angel James Moreno,
*Appellant*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Michael J. Brown joined.

---

**D O W N I E**, Judge:

¶1        Angel Moreno timely appeals his convictions for resisting arrest, theft of means of transportation, criminal damage, and threatening or intimidating in violation of Arizona Revised Statutes ("A.R.S.") sections 13-2508(A)(1), -1814(A)(5), -1602(A)(1), and -1202(A)(1), respectively. Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), defense counsel has searched the record, found no arguable question of law, and asked that we review the record for reversible error. *See State v. Richardson*, 175 Ariz. 336, 339, 857 P.2d 388, 391 (App. 1993). Moreno filed a supplemental brief *in propria persona* that we have considered.

**FACTS AND PROCEDURAL HISTORY[1]**

¶2        Officer Urbatsch was on patrol when he spotted a turquoise late-model Chevrolet Camaro fitting the description of a vehicle recently reported stolen. A person later identified as Jose Garcia emerged from a nearby backyard and approached the officer. Officer Urbatsch questioned Garcia about the Camaro. Moreno then emerged from the same backyard and joined the conversation. He explained that he was in the process of buying the Camaro and had the owner's permission to test drive it to his home, where it was parked.

¶3        Officer Urbatsch received confirmation the Camaro had been stolen. Upon hearing this news, Moreno and Garcia became belligerent, stopped cooperating, and began screaming obscenities. They fled to the fenced backyard. Officer Urbatsch followed, but Garcia ran at him with something in his hand, causing the officer to retreat and draw his firearm.

---

[1] We view the facts "in the light most favorable to sustaining the conviction[s]." *State v. Tison*, 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981).

¶4        Officer Magness arrived to assist.  Officer Urbatsch moved to the front of the house and saw Moreno running "in a dead sprint."  He gave chase.  Moreno ignored commands to stop.  Officer Urbatsch ultimately caught Moreno, who resisted attempts to handcuff him.  After Moreno was handcuffed and placed in a patrol car, officers returned to Moreno's house.  Garcia, still in the backyard, was "spraying something" at officers and screaming profanities.  It took five officers to subdue him.  While in the patrol vehicle, Garcia kicked the doors and screamed obscenities.  Moreno then began screaming and "kicking out the doors" of the patrol car he was in.  Officers attempted to restrain him.  Moreno claimed he was in the Mexican Mafia and stated he and Garcia would "come to your house and kill you and your kids."  He repeated the threat "a few times."  Moreno later loosened his restraint and began kicking again.  He "broke the rubber molding around the top of the car . . . and also bent the car door out to the point where it couldn't be closed anymore."

¶5        Moreno was charged with resisting arrest, a class six felony, theft of means of transportation, a class three felony, criminal damage, a class one misdemeanor, and threatening or intimidating, a class one misdemeanor.  A jury found Moreno guilty of all counts. The court imposed concurrent and consecutive terms of imprisonment, and Moreno timely appealed.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

¶6        We have read and considered the briefs submitted by Moreno and his counsel and have reviewed the entire record.  *See Leon*, 104 Ariz. at 300, 451 P.2d at 881.  We find no reversible error.  All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure.  Moreno was either present at or waived his presence for all critical phases of the proceedings.  He was represented by counsel. The jury was properly impaneled and instructed.  The jury instructions were consistent with the offenses charged.  The record reflects no irregularity in the deliberation process.

¶7        Moreno contends he was "never able to testify."  The record, though, establishes that he was offered a full opportunity to present witnesses and evidence at trial, but declined to do so.

¶8        Construing Moreno's remaining arguments liberally, he appears to challenge the sufficiency of the evidence supporting his

3

convictions. Our review of the record reveals substantial evidence for each conviction. *See Tison*, 129 Ariz. at 552, 633 P.2d at 361 (in reviewing for sufficiency of evidence, "[t]he test to be applied is whether there is substantial evidence to support a guilty verdict"). "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996). We will reverse a conviction "only if there is a complete absence of probative facts to support [the jury's] conclusion." *State v. Carlisle*, 198 Ariz. 203, 206, ¶ 11, 8 P.3d 391, 394 (App. 2000) (internal quotation marks omitted).

¶9        A person commits theft of means of transportation if, without lawful authority, he knowingly "[c]ontrols another person's means of transportation knowing or having reason to know that the property is stolen." A.R.S. § 13-1814(A)(5). The Camaro's owners did not give Moreno or Garcia permission to drive the car. The Camaro had a cracked steering column and could only be operated with a tool like a screwdriver. Moreno was in possession of the Camaro within approximately two hours of it being reported stolen. *See State v. Rood*, 11 Ariz. App. 102, 103, 462 P.2d 399, 400 (1969) ("Unexplained possession of recently stolen goods can generate an inference of the requisite felonious intent."). Once officers verified that the Camaro was stolen, Moreno stopped cooperating and attempted to flee. *See State v. Hunter*, 136 Ariz. 45, 48-49, 664 P.2d 195, 198-99 (1983) (jury can consider flight as consciousness of guilt).

¶10        Resisting arrest occurs when a person intentionally prevents or attempts "to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by[] . . . [u]sing or threatening to use physical force against the peace officer." A.R.S. § 13-2508(A)(1). Officers Urbatsch and Magness wore police uniforms, and Officer Urbatsch spoke to Moreno from inside a patrol vehicle. As Officer Urbatsch was chasing Moreno, he shouted, "stop police." Moreno continued to resist even after officers caught up with him and disregarded commands to "stop resisting."

¶11        There was likewise substantial evidence Moreno committed criminal damage by recklessly defacing or damaging property of the Phoenix Police Department. *See* A.R.S. § 13-1602(A)(1). Officers observed Moreno kicking the door of the patrol vehicle. He kicked it to such an extent that the door bowed, the rubber lining broke off, and the vehicle had to be taken out of service because it could no longer secure passengers.

**¶12**        Finally, the record supports Moreno's conviction for threatening or intimidating, an offense that requires evidence of a threat, by words or conduct, to cause physical injury to another person. *See* A.R.S. § 13-1202(A)(1). After reading their nametags aloud, Moreno told Sergeant Britt, Officer McDavid, and Officer Magness that he was a member of the Mexican Mafia and that he would kill them and their children. The officers testified that because the Mexican Mafia is a dangerous criminal street gang, they took the threat seriously.

## CONCLUSION

**¶13**        We affirm Moreno's convictions and sentences. Counsel's obligations pertaining to Moreno's representation in this appeal have ended. Counsel need do nothing more than inform Moreno of the status of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). On the court's own motion, Moreno shall have 30 days from the date of this decision to proceed, if he desires, with an *in propria persona* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh