NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RAHIM ABDUL MUHAMMAD, *Appellant.*

No. 1 CA-CR 13-0653
FILED 2-3-2015

Appeal from the Superior Court in Maricopa County
No. CR 2013-000017-001
The Honorable Hugh E. Hegyi, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Andrew W. Gould and Judge Samuel A. Thumma joined.

---

D O W N I E, Judge:

¶1　　　　Rahim Abdul Muhammad appeals his convictions and sentences for kidnapping, aggravated assault, unlawful use of means of transportation, burglary, possession of marijuana, and misconduct involving weapons.  Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), defense counsel has searched the record, found no arguable question of law, and asked that we review the record for reversible error.  *See State v. Richardson*, 175 Ariz. 336, 339, 857 P.2d 388, 391 (App. 1993).  Muhammad did not file a supplemental brief.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

¶2　　　　On December 29, 2012, Muhammad knocked on the door of N.R.'s apartment and was let in by N.R.'s minor son, R.D.  Present in the apartment were N.R., R.D., and two females, T.H. and E.E.  Muhammad and N.R., who were long-time friends, stepped outside to talk.  Muhammad was upset and incoherent, and an altercation ensued.  Muhammad struck N.R. in the ear with a black revolver and pinned him against the apartment's front window.  Muhammad then fired a shot between N.R.'s legs.  T.H. left through the apartment's back door and phoned the police.

¶3　　　　N.R. convinced Muhammad they should leave the premises for R.D.'s safety.  The two men returned to the apartment to get car keys.  E.E., who had been sleeping prior to the gunshot, took R.D. into the bathroom and closed the door.  Muhammad kicked in the door, pointed the revolver at E.E., and demanded to know who she was.  N.R. pleaded with Muhammad not to hurt his son and said E.E. was there to babysit.  Muhammad and N.R. then left the apartment.

---

[1]　　　We view the facts "in the light most favorable to sustaining the conviction[s]." *State v. Tison*, 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981).

¶4         N.R. drove; Muhammad got into the back seat, keeping his revolver pointed at N.R.  Muhammad tossed N.R. a container of marijuana and demanded he roll a joint.  N.R. began doing so, but stopped, prompting Muhammad to shoot him in the hand.  The two men drove around for over an hour, with N.R. following Muhammad's instructions on where to go.  At one point, Muhammad made a comment to the effect of "this is where our adventure ends."  N.R. believed Muhammad planned to kill him.  N.R. asked Muhammad to roll him a cigarette.  When Muhammad set his gun down to do so, N.R. opened the door of the moving car and rolled out onto the street.  N.R. slid on the pavement, injuring his back, and ran to a nearby business.  Employees phoned the police, and N.R. was taken to the hospital.  Muhammad drove away but later abandoned the car roughly a mile from N.R.'s apartment.

¶5         Police officers set up a Facebook account, contacted Muhammad to express interest in purchasing property, and arranged to meet him at a restaurant.  When Muhammad left the restaurant, he was arrested.   Officers found a black revolver, ammunition, and a bag containing marijuana on Muhammad's person while performing a search incident to arrest.  At N.R.'s apartment, officers discovered blood, bullet fragments, and a bullet strike.  They also found a shoe print on the outside of the bathroom door and N.R.'s blood on the center console, steering wheel, and driver's side door of the car he had been driving.

¶6         Muhammad was charged with: (1) count one, armed robbery, a class two dangerous felony, (2) count two, kidnapping, a class two dangerous felony, (3) count three, aggravated assault, a class three dangerous felony, (4) count four, theft of means of transportation, a class three felony, (5) count five, burglary in the first degree, a class two dangerous felony, (6) count six, possession or use of marijuana, a class six felony, and (7) count seven, misconduct involving weapons, a class four felony.  Twelve jurors and two alternates were seated for the ensuing nine-day trial.

¶7         Muhammad was acquitted of count one but found guilty of counts two, three, five, six, and seven, as well as unlawful use of means of transportation, a lesser included offense of count four.  At sentencing, the court found counts two and three to be dangerous offenses.  Muhammad was sentenced to an aggravated 14 year sentence for count two, to run concurrently with a presumptive 2.25 year sentence for count four, a presumptive 1.75 year sentence for count six, and a presumptive 4.5 year sentence for count seven.  He was sentenced to a presumptive 7.5 year sentence for count three, to run consecutively to his sentence for count two,

and was placed on 5 years' probation for count five, to begin upon his discharge from prison. He received 231 days of presentence incarceration credit.

**¶8**　　　　Muhammad timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, as well as Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶9**　　　　We have read and considered the brief submitted by appellate counsel and have reviewed the entire record. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. We find no reversible error. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. Muhammad was either present at or waived his presence for all critical phases of the proceedings. He was represented by counsel. The jury was properly impaneled and instructed. The jury instructions were consistent with the offenses charged. The jury was comprised of 12 individuals, and the record reflects no irregularity in the deliberation process.[2] The sentences imposed were within the statutory ranges.

**¶10**　　　　The record includes substantial evidence to support the jury verdicts. *See Tison*, 129 Ariz. at 552, 633 P.2d at 361 (In reviewing for sufficiency of evidence, "[t]he test to be applied is whether there is substantial evidence to support a guilty verdict."). "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996). Substantial evidence "may be either circumstantial or direct." *State v. Henry*, 205 Ariz. 229, 232, ¶ 11, 68 P.3d 455, 458 (App. 2003).

**¶11**　　　　For count two, the State was required to prove Muhammad knowingly restrained N.R. with the intent to inflict death or physical injury,

---

[2]　　　Based on a defense motion, one juror was dismissed on the fifth day of trial after he admitted researching locations discussed in the case and looking up the trial judge's Facebook page. The court conducted an inquiry and determined this juror's actions did not affect the impartiality of any other members of the jury. *See State v. Trostle*, 191 Ariz. 4, 13-14, 951 P.2d 869, 878-79 (1997) (trial court is justified in striking jurors who do not follow admonition, but does not abuse its discretion by choosing not to strike jurors when satisfied of their continued impartiality).

or with the intent to place N.R. in reasonable apprehension of imminent physical injury. *See* A.R.S. § 13-1304(A)(3)-(4). "Knowingly" means the perpetrator is aware or believes his conduct is of the nature described by a statute defining an offense. *See* A.R.S. § 13-105(10)(b). "'Restrain' means to restrict a person's movements without consent . . . in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such person" using physical force or intimidation. A.R.S. § 13-1301(2)(a).

¶12        N.R. testified he did not want to leave the apartment with Muhammad and did so only because he feared for his safety, as well as that of his son. As the two men were leaving the apartment, Muhammad pointed the gun at N.R. and continued to point the gun at him as they drove around. Muhammad inflicted actual physical injury by shooting N.R. in the hand, and he created reasonable apprehension of further physical injury by continuing to point the gun at him. Further, N.R. testified Muhammad's actions led him to believe Muhammad intended to kill him. While Muhammad's version of events differed from N.R.'s, it was the jury's role to weigh the credibility of the witnesses. Substantial evidence supports the conviction as to count two.

¶13        For count three, the State was required to prove Muhammad committed assault using a deadly weapon or dangerous instrument, or caused serious physical injury to another in the act of committing assault. A.R.S. § 13-1204(A)(1)-(2). Assault, as defined by A.R.S. § 13-1203(A), can be committed by "[i]ntentionally, knowingly or recklessly causing any physical injury to another person," "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury," or by "[k]nowingly touching another person with the intent to injure, insult or provoke such person." N.R. testified Muhammad struck him with the revolver, shot the gun at the ground between his legs, and later shot him in the hand. N.R. suffered serious injury to his hand that led to amputation of one of his fingers. Though Muhammad's testimony conflicted with N.R.'s, the jury obviously found the victim's testimony more credible. Substantial evidence supports the aggravated assault conviction.

¶14        Regarding count four, Muhammad was charged with theft of means of transportation but was convicted of the lesser-included offense of unlawful use of means of transportation. *See State v. Breed*, 230 Ariz. 462, 462-63, ¶¶ 4-8, 286 P.3d 806, 806-08 (App. 2012) (unlawful use is lesser-included offense of theft of means of transportation). To prove this count, the State was required to show that Muhammad knowingly took unauthorized control over another person's means of transportation

without the intent to permanently deprive the other person of it. A.R.S. § 13-1803(A)(1).

¶15        N.R. testified the car at issue belonged to his mother. He testified he leapt from the moving car because he feared for his life. Muhammad testified he took control of the car only to protect himself and prevent it from crashing. The car, however, was found several miles from where N.R. abandoned it. Substantial evidence supports Muhammad's conviction for unlawful use of means of transportation.

¶16        For count five, the State was required to prove Muhammad entered or remained unlawfully in a residential structure with the intent to commit a felony within and that he did so while knowingly possessing a deadly weapon. *See* A.R.S. § 13-1507(A) to -1508(A). As previously discussed, the evidence established that Muhammad committed both aggravated assault and kidnapping while at N.R.'s residence. There is also evidence he intended to commit felony offenses at that location. Based on the evidence presented, the jury could have found Muhammad guilty of the charged offense.

¶17        For count six, the State was required to prove Muhammad knowingly possessed marijuana that was not for sale, having a weight of less than two pounds. A.R.S. § 13-3405(A)(1), (B)(1). Detective Lugo testified Muhammad had a small baggie of marijuana in his pocket. Another officer tested the substance in the baggie and determined it was indeed marijuana. Muhammad admitted the marijuana was his and admitted having it for his own personal use. Substantial evidence supports the conviction for possession of marijuana.

¶18        For count seven, the State was required to prove Muhammad knowingly possessed a deadly or prohibited weapon while a prohibited possessor. A.R.S. § 13-3102(A)(4). Detective Lugo testified Muhammad had a revolver and ammunition on his person when arrested. Additionally, the State presented evidence Muhammad had prior felony convictions, and he admitted being a prohibited possessor. He also admitted carrying the revolver despite his status as a prohibited possessor. Substantial evidence supports the conviction for misconduct involving weapons.

## CONCLUSION

¶19        We affirm Muhammad's convictions and sentences. Counsel's obligations pertaining to Muhammad's representation in this appeal have ended. Counsel need do nothing more than inform Muhammad of the status of his appeal and his future options, unless

counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). On the court's own motion, Muhammad shall have thirty days from the date of this decision to proceed, if he desires, with an *in propria persona* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: ama