NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LOLO MUNGIA, *Appellant.*

No. 1 CA-CR 14-0638
FILED 5-5-2016

Appeal from the Superior Court in Maricopa County
No. CR2012-108794-002
The Honorable Cynthia Bailey, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Janelle A. McEachern, Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

―――――――――――――――

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Randall M. Howe joined.

―――――――――――――――

**C A T T A N I**, Judge:

¶1        Lolo Mungia was convicted of two counts of aggravated assault and one count of discharging a firearm at a structure. For reasons that follow, we affirm his convictions and the resulting sentences.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        One evening in February 2012, around 30 guests gathered for a party at a house near Pierce Park in Phoenix. The guests congregated in the garage until the party ended around midnight. As the guests were leaving, a white truck drove up and parked across the street. Mungia and Joseph Fuentes were among several people in the truck.

¶3        A scuffle began in the street between a few guests who were leaving the party and a man from the truck. The man was short and thin with a fade haircut, and he was wearing a white t-shirt. After that scuffle ended, he walked up the driveway toward the party and got into a fistfight with another guest. The fight expanded as more men from the truck (including a "heavyset" man in a black t-shirt) and more men from the party (including victims J.P. and A.C.) joined in.

¶4        Eventually, the fight began to break up, but as some of the guests returned to the garage, the situation escalated again, with individuals from both groups arguing loudly. J.P. then saw the man in the white t-shirt pull a pistol from his waistband and fire several shots at the house and the garage.

¶5        After the man in the white t-shirt stopped firing, J.P. saw a man in a black shirt with green on the front aim and then fire a pistol at him from the street. J.P. then drew a .45 caliber pistol and returned fire. A.C., who was still outside, also saw a heavyset man in a black shirt with green lettering pull out a pistol and shoot several shots at him and toward the house.

¶6  Immediately after the shooting, Phoenix police officers followed a white truck leaving the area. Although the officers activated their sirens, the truck did not pull over but instead sped up, driving to a nearby hospital. There, officers arrested the driver, Fuentes, who was wearing a white shirt. Mungia—wearing two black shirts, one with green lettering and both punctured by bullet holes—got out from the passenger side and was taken into the hospital for treatment of several gunshot wounds.

¶7  Although J.P. was unable to identify the black-shirted shooter, A.C. later identified Mungia as the gunman in black both in a photographic lineup and later in court.

¶8  Police recovered a nine-millimeter Taurus pistol from the floorboards under the driver's seat of the white truck. At the house where the shooting took place, police found 23 nine-millimeter bullet casings in the driveway and the street—11 from the Taurus pistol and 12 from another, unidentified pistol—as well as 11 .45 caliber casings in the front yard. Police officers also noted multiple bullet strikes to the house, the garage, and nearby vehicles.

¶9  In an interview at the hospital, Mungia denied knowing who had shot him, claiming that he had been shot unexpectedly when walking near Pierce Park. He further denied that either he or Fuentes had fired a gun that day.

¶10  After leaving the hospital, Mungia was arrested and charged with four counts of aggravated assault and two counts of discharging a firearm at a structure.[1] At trial, with the State's agreement, the court granted Mungia's request for judgment of acquittal as to one of the aggravated assault counts and one of the discharging a firearm counts. The jury found Mungia guilty of discharging a weapon at a residential structure and of aggravated assaults against J.P. and A.C., but acquitted him of aggravated assault against another alleged victim.

¶11  The court sentenced Mungia to concurrent terms of imprisonment, the longest being 8.5 years. With the superior court's

---

[1]  The indictment also charged Mungia with four counts of threatening or intimidating and one count of assisting a criminal street gang, but those charges were dismissed before trial.

authorization, Mungia timely filed a delayed notice of appeal. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4033.[2]

## DISCUSSION

**¶12**  Mungia argues that the State failed to present substantial evidence establishing that he was the shooter. We review the sufficiency of the evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).

**¶13**  Substantial evidence to support a conviction is evidence, either direct or circumstantial, that "reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *State v. Davolt*, 207 Ariz. 191, 212, ¶ 87 (2004); *see also West*, 226 Ariz. at 562, ¶ 16. "If reasonable [minds] may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial." *State v. Tison*, 129 Ariz. 546, 553 (1981). We do not reweigh the evidence or the jury's assessment of credibility. *See State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004). Reversal is warranted only if "there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (citation omitted).

**¶14**  Mungia asserts that witness descriptions of the shooter varied significantly, from thin to heavy and from white shirt to black shirt (with or without lettering). But the evidence suggested two different shooters using two different guns, and the witnesses' descriptions were largely consistent when considering each of the two shooters.

**¶15**  Multiple witnesses described one shooter as a "skinny kid" in a white shirt, who was involved in the fighting and then shot at the house. And both of the aggravated assault victims in Mungia's case (A.C. and J.P.) stated that a heavyset man in a black shirt with green on the front fired shots at them and toward the house. A.C. specifically identified Mungia, both in a photographic lineup and in court, as the heavyset shooter in black.

**¶16**  Mungia challenges A.C.'s identification testimony, claiming that it was not credible. But credibility determinations are reserved exclusively for the jury. *State v. Cox*, 217 Ariz. 353, 357, ¶ 27 (2007). Mungia had an opportunity to challenge A.C.'s credibility at trial, and we defer to the jury's credibility assessment. *See Williams*, 209 Ariz. at 231, ¶ 6.

---

[2]  Absent material revisions after the relevant date, we cite a statute's current version.

¶17        Mungia also asserts that no physical evidence tied him to the gun.  Physical evidence is not necessary, however, if other evidence establishes guilt beyond a reasonable doubt.  *State v. Cañez*, 202 Ariz. 133, 149, ¶ 42 (2002).  In light of A.C.'s identification, J.P.'s consistent description of the shooter in black, and the black shirt with green lettering Mungia was wearing when he arrived at the hospital, substantial evidence supported the jury's conclusion that Mungia was the shooter in black, and thus substantial evidence supported his convictions.

## CONCLUSION

¶18        For the foregoing reasons, we affirm Mungia's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama