The **PEOPLE OF THE TERRITORY OF GUAM**, Plaintiff–Appellee,

v.

**Franklin Borja CAMACHO,**
Defendant–Appellant.

No. 94–10593.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 15, 1995.[*]

Decided Dec. 24, 1996.

---

[*] The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

Michael F. Phillips, Phillips & Bordallo, Agana, Guam, for defendant-appellant.

Richard Parker Arens, Attorney General's Office, Agana, Guam, for plaintiff-appellee.

Before: SNEED, KOZINSKI and JOHN T. NOONAN, Jr., Circuit Judges.

JOHN T. NOONAN, Jr., Circuit Judge:

Franklin Borja Camacho appeals his conviction of violation of 9 Guam Code Annotated § 49.40(a) (Official Misconduct) and his conviction of violation of 9 Guam Code Annotated § 61.20(b) (Harassment). He was convicted of these crimes in the Superior Court of Guam; the convictions were affirmed by the Appellate Division of the District Court of Guam, to which we stand in the relation of a final court of appeals. 48 U.S.C. § 1424–3(c).

The questions presented on appeal relate to how these crimes may be proved and to the scope of the official misconduct statute.

## THE EVIDENCE

In April 1992 Camacho was a bus driver employed by the Department of Public Works of Guam. V was a 10–year–old girl attending the fifth grade and traveling to her school on a bus driven by Camacho. One morning after she had carried out her assigned responsibility of counting the students boarding the bus she waited at the front of the bus for Camacho to board. When he did, she began to walk towards her seat. At that point, according to her testimony, he "pinched her rear end" with both his hands. When she got off the bus that morning he said to her, as he had said on other occasions to her, "Save it for me."

This evidence summarizes the crimes of which Camacho was convicted. In the same trial Camacho was defending himself against the charge that he had also touched the buttocks of a nine-year-old girl who traveled on his bus. He was acquitted of this charge.

Over the objection of the defense, the government also introduced evidence that at some period between 1986 and 1987 Camacho had made a sexual advance toward a 17–year–old girl whom he carried as a passenger on his school bus. The sexual advance occurred off-duty when Camacho was driving his own car. The result of the girl reporting the incident was that Camacho was suspended from duty.

Over similar objection by the defense, the government introduced evidence that in 1988 the mother of a 14–year–old girl had found her daughter in a truck with Camacho under circumstances that suggested some kind of sexually-motivated rendezvous. At the time Camacho was her daughter's bus driver. As a result of the mother's complaint Camacho's assignment was switched to another bus route.

## PROCEEDINGS

On July 24, 1992 Camacho was indicted by the grand jury on a charge of second degree criminal sexual conduct, a first degree felony. On March 19, 1993 the People filed an amended complaint charging him with three counts of official misconduct, a misdemeanor, and three counts of harassment, a petty mis-

demeanor. Due to the unavailability of one alleged victim, counts 5 and 6 were dismissed with prejudice by the People.

Prior to trial the prosecution moved to admit as prior bad acts the testimony regarding the 17–year–old girl and the 14–year–old girl. The court ruled in favor of admissibility. At trial the defendant testified that he had never touched either V or the girl as to whom he was eventually acquitted. He did not deny the incident involving the 14–year–old found in his truck. In argument, the prosecution referred to the bad act testimony at some length characterizing it as "very damaging" and "extremely damaging." The jury was instructed that such evidence could be considered to prove "the existence of the intent which is a necessary element of the crime" or "the absence of mistake or accident by the defendant" or that the crime charged was "a part of a larger continuing plan or scheme"; but that such evidence was not to be considered "to prove that the defendant is a person of bad character or that he has a disposition to commit crimes."

The jury returned a verdict of guilty on both counts involving V. Camacho was sentenced to 60 days imprisonment on the charge of harassment and to a year on the charge of official misconduct. On appeal to the Appellate Division of the District Court that court affirmed the convictions two-to-one. Judge Unpingco dissented as to the admission of the bad act evidence and did not reach the question of the proper interpretation of the official misconduct statute.

Camacho appeals from this decision.

## ANALYSIS

### The Official Misconduct Statute

The statute reads in relevant part as follows:

A public servant commits a misdemeanor if, with intent to benefit himself or another person or to harm another person or to deprive another person of a benefit;

(a) he commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized. 9 GCA § 49.90(a).

The statute further defines a public servant to include "any officer, member, or employee of the legislative, executive, or judicial branches of the Territory." *Id.* § 49.10(d). It defines "official function" to mean, among other things, the "performance of duty of a public servant in a lawful or unlawful manner." *Id.* § 49.10(b). It defines "benefit" to mean "any gain or advantage or anything regarded by the beneficiary as gain or advantage ... other than the beneficiary's lawful compensation." *Id.* 49.10(a). "Benefit" is defined in distinction to "pecuniary benefit" which means "benefit in the form of money ... or anything else the primary significance of which is economic gain." *Id.* 49.10(c).

 The statutory text fits Camacho's crime. As the employee of the Department of Public Works he was a public servant. As a bus driver running the bus he was performing his duty, albeit in an unlawful manner, when he pinched the buttocks of V. That he performed this action with the intent to benefit himself is inferable from its patently sexual nature. The conclusion that "benefit" within the statute means more than "pecuniary benefit" is, of course, strengthened by the separate statutory definition provided of "pecuniary benefit." "Benefit" is broad enough to encompass even momentary sexual titillation, although if no physical contact were involved the benefit might be too small to warrant prosecution. *See* Appropriateness of Prosecution, 9 G.C.A. § 7.67. The statute, we may confidently say, does not punish thoughts or glances.

 The Guam statute also requires that the act "relat[e] to" the defendant's office. Thus, to convict under the statute, the jury must be able to infer a nexus between act and office. That the act was committed on government time, or government premises, does not necessarily make the conduct official.

 Camacho argues that "the statute ... seem[s] to apply to official misconduct of the sort associated with public officers accepting bribes or engaging in extortion." This contention ignores the language of the statute, which is much broader than Camacho suggests. But there *is* something special about the acts he lists. In cases of bribery or extortion, the link between act and office is automatic. For other acts, the link must be established. Sexual misconduct, for example, can be committed on government premises with or without "relating to" the defendant's office.

If Camacho had molested children while purporting to be performing his busdriverly duties (for example, by telling them he needed to frisk them for security reasons), he would be guilty of official misconduct. So too if he used the power of his office to "exert influence and physical control" over his victims. Because the jury could reasonably have found, on the evidence presented, that Camacho did use his office to exert such influence over a child entrusted to his care, it was entitled to find him guilty.

The children on the bus were in Camacho's care: their care was his official duty. When he caressed one of them with sexual intent it was an unauthorized exercise of an official function benefiting him and harming V. Such an act is to be distinguished from unauthorized conduct irrelevant to his office, such as whistling which he might do as he drove or placing a bet during a stop while he was on duty; neither the whistling nor the betting would be an act relating to his office. A myriad of acts can indeed be imagined that a government employee might engage in while in government employment and on government time, acts that would be unauthorized by the job description and facilitated by being in the government office but free from criminal stain because they would not "relate" to the office: for example, telephoning one's wife, mother, or stockbroker on a personal matter. To be criminal under Guam's statute the unauthorized act must not only be performed with an intent to harm another or benefit the official but must be an exercise of the governmental function.

There are at least 19 states with comparable statutes proscribing official misconduct. *See* Alaska Stat. § 11.56.850 (1994); Colo. Rev.Stat.Ann. § 18–8–404 (West 1994); Del. Code Ann., tit. 11, § 1211 (1994); Ill.Ann. Stat. ch. 720, § 5/33–3 (Smith–Hurd 1995); Ind.Code Ann. § 35–44–1–2 (West 1995); Iowa Code Ann. § 721.2 (West 1994); Kan.

Stat.Ann. § 21–3902(a) (1994); Ky.Rev.Stat. Ann. §§ 522.020, 522.030 (Michie 1995); La. Rev.Stat.Ann. § 14:134 (West 1994); Mich. Stat.Ann. § 28.746 (West 1994); Minn.Stat. Ann. § 609.43 (1995); Mont.Code Ann. § 45–7–401 (1993); Neb.Rev.Stat. § 28–924 (1994); N.J.Rev.Stat. § 2C:30–2 (1994); N.Y. Penal Law § 195.00 (McKinney 1994); Or.Rev.Stat. §§ 162.405, 162.415 (1994); Tenn.Code Ann. § 39–16–402 (1994); Tex.Penal Code Ann. § 39.02 (West 1994); Wash. Rev.Code § 9A.80.010 (1994).

Alaska, Illinois, Minnesota, New Jersey, New York, Oregon, and Texas have applied their official misconduct statutes to cover sexual offenses by public servants. *See Feichtinger v. State,* 779 P.2d 344 (Alaska.Ct.App.1989) (affirming official misconduct conviction of police officer for engaging in sadomasochistic sexual acts with juveniles under color of authority); *People v. Cora,* 238 Ill.App.3d 492, 179 Ill.Dec. 623, 628, 606 N.E.2d 455, 460 (1992) (affirming official misconduct conviction of school teacher for sexually abusing one of his students during course of employment); *State v. Ford,* 397 N.W.2d 875 (Minn.1986) (holding that public school teacher's engaging in sexual acts with students in exchange for favors constituted official misconduct); *State v. Parker,* 124 N.J. 628, 592 A.2d 228 (1991) (affirming official misconduct conviction of school teacher for continued sexual acts with her ten-to twelve-year-old students), *cert. denied,* 503 U.S. 939, 112 S.Ct. 1483, 117 L.Ed.2d 625 (1992); *People v. Abranko,* 157 Misc.2d 972, 599 N.Y.S.2d 447 (N.Y.City Crim.Ct.1993) (holding that emergency medical technician could be convicted for official misconduct for alleged sexual touching and digital penetration of patient during course of employment); *State v. Gove,* 128 Or.App. 239, 875 P.2d 534 (1994) (affirming police officer's official misconduct conviction for sexual advances made toward woman).

■ These cases confirm that this kind of statute is intended to cover more than cash bribery or cash extortion. Official misconduct can be criminal when advantages other than money accrue to the public servant in the wrongful exercise of office. That sexual gratification should be prominent among these other advantages is not merely characteristic of our society; it reflects a long tradition in the misuse of authority. The most famous play in English on the subject, Shakespeare's *Measure for Measure,* turns on officeholder Angelo's attempt to secure the seduction of the innocent Isabella. Angelo's feigned use of his power to pardon Isabella's brother in order to get her consent is official misconduct. Cases of this kind also confirm our conclusion that "any benefit" in the statute includes the momentary sexual gratification that Camacho inferably derived from his crude gesture.

*The Bad Act Evidence*

■ A close question is presented by the bad act evidence. Certainly, this evidence would have a tendency to convince the jury that Camacho had a propensity to engage in sexual contact with underage girls. However, evidence of prior bad acts is properly admitted for a number of purposes, including proof of intent or absence of mistake. Fed. R.Evid. 404(b). Here, the statute of conviction required proof that Camacho had the "intent to benefit himself ... or to harm another person...." 9 GCA § 49.90(a).

Although defendant claimed at trial that the incidents charged never occurred, the jury was entitled to find (and *did* find) that they did, raising the question of whether the physical contact could have been accidental. On this point, the prior bad act evidence was probative. The judge was within his discretion in finding that its probative value outweighed possible prejudice under Rule 403.

Judge Noonan is in agreement with Judge Unpingco that the evidence should not have been admitted. A majority of the court, however, is of the opinion that the trial judge acted within his discretion in admitting this evidence.

**AFFIRMED.**