IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2001-0146 |
| | ) | DEPARTMENT A |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| TYRONE VAUGHN HENRY, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20001846

Honorable Michael J. Cruikshank, Judge

AFFIRMED

---

Terry Goddard, Arizona Attorney General
 By Randall M. Howe and R. Wayne Ford                                          Phoenix
                                                                      Attorneys for Appellee

Tyrone Vaughn Henry                                                          Florence
                                                                      In Propria Persona

---

H O W A R D, Judge.

¶1        Appellant Tyrone Henry was convicted of fraudulent scheme and artifice and sentenced to prison.  He argues the trial court erred in denying his motion for judgment of acquittal.[1]  Finding no abuse of discretion or other reversible error, we affirm.

---

[1]In a separate memorandum decision, we reject Henry's other claims, none of which merits publication or requires reversal.  *See* Ariz. R. Sup. Ct. 111, 17A A.R.S.

**FACTS AND PROCEDURAL BACKGROUND**

¶2      We view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the conviction. *State v. Riley*, 196 Ariz. 40, ¶2, 992 P.2d 1135, ¶2 (App. 1999). In June 2000, Henry approached the victims, fifteen-year-old K. and sixteen-year-old C., at a shopping mall. He claimed to be marketing a new face cream, asked the victims whether they used face creams, and showed them photographs of females with "clumpy," white cream on their faces. Henry said he was conducting a survey of the face cream, using females ages twelve to twenty-five, and appeared to write the victims' responses to questions he asked them about lotions they used. He asked the victims if they would like to further participate in the survey by having facials, offering them $10 each to do so. The victims made an appointment to have facials the next day.

¶3      Henry telephoned the victims the next day and gave them directions to his apartment. The victims took a male friend along to the apartment, but Henry requested that the friend remain outside during the facials, claiming Henry and the victims "had to talk about secret traits that were in the facial cream." After the friend agreed, the victims entered the living room of Henry's small apartment, and he asked K. to lie on a bed and C. to lie on a couch near the bed.

¶4      Wearing cotton shorts and a T-shirt, Henry placed small caps and a bandanna over K.'s eyes and told her she would go blind if any of the face cream got in her eyes. K. felt him brush a substance on her face and then heard him clicking the mouse on his computer. With her eyes still covered, K. then heard heavy breathing and heard Henry telling C., "it's coming soon," and, after that, "it spilt." K. then saw camera flashes after Henry said he was going to take photographs. K. heard Henry walking behind her where C. was lying, and then felt him place a thick, warm substance on K.'s face with his hands. Henry had told K. he would warm the

treatment cream in a microwave oven, but she never heard a microwave oven activated. Shortly thereafter, Henry removed the bandanna and caps and gave K. and C. towels to wipe their faces. When K. sat up to wipe her face, she saw "white stuff" on C.'s chin that was "real thick . . . [and] clumped up."

¶5        Henry had not covered C.'s eyes but had told her to keep them closed, claiming the applications to her face would burn her eyes. Henry had taken a "before" photograph and had applied two substances to C.'s face with his hands and had taken more photographs. He then had told C. to "hold on because the thick treatment was going to come in just a second." Without feeling Henry's hands, C. had then felt "something . . . warm . . . just [go] all over [her] face" and shirt and had then noticed camera flashes.

¶6        Before the victims left the apartment, Henry asked them "how did it feel," giving them a $20 bill. He also asked if they wanted to make another appointment. The victims made another appointment and left with their friend. The victims thereafter discussed what had happened and, based on their suspicions that Henry had ejaculated on C.'s face, contacted the police.

¶7        Police officers interviewed the victims and collected C.'s T-shirt. After receiving crime laboratory test results showing the possible presence of semen on the shirt, which deoxyribonucleic acid (DNA) testing later confirmed as Henry's, police searched his apartment. The search did not produce any indication that Henry had been conducting legitimate face cream testing, but police found a day planner with the victims' names in it, along with the names of numerous other females, and sections marked "site" and "White Dew Facials." Officers seized a computer, a scanner, and 300 to 500 photographs, many of them depicting females involved in situations similar to that the victims had described. Officers also found one photograph of C. on

3

an undeveloped roll of film resembling one of the earlier photographs Henry had taken during the incident. Police discovered that Henry was operating a pornographic Internet website titled, "White Dew Original Facials," on which he would charge visitors between $10 and $90 to view images of females with semen on their faces.

¶8 The state charged Henry with two counts of kidnapping and one count of fraudulent scheme and artifice. At trial, in addition to the victims, M., whose name had been found in Henry's day planner and photographs of whom had been recovered from Henry's apartment, testified that, about two years earlier, she had responded to an advertisement in which Henry had offered money for females to participate in a face cream experiment. She testified that she had made an appointment with Henry and had gone to his apartment. She said Henry had covered her eyes, telling her that the cream would burn her eyes, had surreptitiously ejaculated on her face, and had taken photographs. Tests conducted on a stain from a sweater M. had worn during the incident produced results consistent with Henry's semen.

¶9 In his defense, Henry called several females, who testified they had gone to Henry's apartment and had willingly posed for photographs with Henry's semen on their faces, which they had understood would be used on Henry's website. They testified that Henry had paid them as much as $100 per hour for posing for the photographs. During closing argument, Henry suggested that he, in fact, had been engaged in legitimate skin cream testing, that the semen found on C.'s shirt could have been transferred there from the towel she had used to clean her face at Henry's apartment, and that M. had shown up for a face treatment, had flirted with Henry, and had wanted to "play around with some other things."

¶10 The trial court granted Henry's motion for judgment of acquittal on the kidnapping charges but denied it on the fraudulent scheme count. The jury found Henry guilty, and the court

4

imposed a presumptive, five-year prison sentence, which the court enhanced by two years after Henry admitted having committed the offense while on release for an unrelated offense.

## DISCUSSION

¶11      Henry argues the trial court erred in denying his motion for judgment of acquittal, submitted pursuant to Rule 20, Ariz. R. Crim. P., 17 A.R.S., after the conclusion of the state's evidence. We review a trial court's denial of a Rule 20 motion for an abuse of discretion and will reverse only no substantial evidence supports the conviction. *State v. Carlos*, 199 Ariz. 273, ¶7, 17 P.3d 118, ¶7 (App. 2001). Substantial evidence, which may be either circumstantial or direct, is evidence that a reasonable jury can accept as sufficient to infer guilt beyond a reasonable doubt. *State v. Fulminante*, 193 Ariz. 485, ¶24, 975 P.2d 75, ¶24 (1999); *State v. Garza*, 196 Ariz. 210, ¶3, 994 P.2d 1025, ¶3 (App. 1999); *State v. Sabalos*, 178 Ariz. 420, 422, 874 P.2d 977, 979 (App. 1994). Ultimately, a trial court must submit a case to the jury if reasonable minds can differ on the inferences to be drawn from the evidence. *State v. Landrigan*, 176 Ariz. 1, 4, 859 P.2d 111, 114 (App. 1993).

¶12      The jury found Henry guilty of fraudulent scheme and artifice, in violation of A.R.S. § 13-2310(A), which prohibits a person from, "pursuant to a scheme or artifice to defraud, knowingly obtain[ing] any benefit by means of false or fraudulent pretenses, representations, promises or material omissions." For purposes of § 13-2310(A), "a 'scheme or artifice' is some 'plan, device, or trick' to perpetrate a fraud." *State v. Haas*, 138 Ariz. 413, 423, 675 P.2d 673, 683 (1983), *quoting State v. Stewart*, 118 Ariz. 281, 283, 576 P.2d 140, 142 (App. 1978). "The scheme need not be fraudulent on its face but 'must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *Haas*, 138 Ariz. at 418, 675 P.2d at 678, *quoting United States v. Pearlstein*,

576 F.2d 531, 535 (3d Cir. 1978) (emphasis omitted). The term "defraud" as used in the statute is not measured by any technical standard but, rather, by a "broad view." *Haas*, 138 Ariz. at 424, 675 P.2d at 684. A "benefit" under the statute is "anything of value or advantage, present or prospective." A.R.S. §§ 13-105(2), 13-2301.

¶13 Henry argues no substantial evidence supports the conviction because sexual gratification does not qualify as a requisite "benefit" under § 13-2310, contrary to the state's argument to the jury.[2] Henry urges that "benefit" as found in § 13-2310 applies only to property and pecuniary gains, not to anything as intangible as sexual gratification. Although we normally review a Rule 20 ruling for an abuse of discretion, *see Carlos*, we review this statutory interpretation issue de novo. *Gray v. Irwin*, 195 Ariz. 273, ¶7, 987 P.2d 759, ¶7 (App. 1999). We agree with the state that, in this case, sexual gratification does qualify as a benefit under § 13-2310.

¶14 In construing a statute, effectuating legislative intent is our principal aim. *State v. Huskie*, 202 Ariz. 283, ¶5, 44 P.3d 161, ¶5 (App. 2002). In ascertaining legislative intent, we consider "'the statute's context, subject matter, historical background, effects, consequences, spirit, and purpose.'" *Id.*, *quoting Hobson v. Mid-Century Ins. Co.*, 199 Ariz. 525, ¶8, 19 P.3d 1241, ¶8 (App. 2001). Moreover, "we interpret statutes to give meaning to every word." *State v. Pitts*, 178 Ariz. 405, 407, 874 P.2d 962, 964 (1994).

---

[2]The trial court allowed the state to argue that either sexual gratification or obtaining photographs of the victims could constitute "any benefit." A.R.S. § 13-2310(A). If A.R.S. § 13-105(2) did not include sexual gratification within the definition of "any benefit," we would be required to reverse. *See State v. Lopez*, 158 Ariz. 258, 266, 762 P.2d 545, 553 (1988) (if two theories of guilt submitted to jury and one is improper, we must reverse); *State v. Alvarado*, 178 Ariz. 539, 543-44, 875 P.2d 198, 202-03 (App. 1994) (same).

¶15        The legislative history and language of § 13-2310 support our result.  Section 13-2310, a portion of the organized crime and fraud chapter of the criminal code, was modeled after 18 U.S.C. § 1341, the federal mail fraud statute.  *See State v. Proctor*, 196 Ariz. 557, ¶13, 2 P.3d 647, ¶13 (App. 1998).  As originally enacted, the language of § 13-2310 more closely resembled that of § 1341, stating that a person was guilty of fraudulent schemes and artifices by fraudulently obtaining "money, property or any other thing of value."  1976 Ariz. Sess. Laws, ch. 134, § 1.  However, two years later, the legislature aimed for a broader scope, amending § 13-2310 by replacing the clause "money, property or any other thing of value" with the more inclusive "any benefit."  1978 Ariz. Sess. Laws, ch. 201, § 156.  And the legislature did not define "benefit" in § 13-2301, the definitions section of the organized crime chapter.  Rather, "benefit" is defined among the definitions for the entire criminal code in § 13-105 and includes "anything of value or advantage," not merely pecuniary gain.  Accordingly, we believe the legislature intended "benefit" as used in § 13-2310 to have a broad definition and did not intend to exclude sexual gratification.

¶16        Henry argues to the contrary, pointing out that § 13-2310 is mentioned numerous times in A.R.S. §§ 13-1801 through 13-1818, the theft chapter, and claiming theft offenses concern only the transfer of property.  According to Henry, § 13-2310, therefore, should also pertain only to the transfer of property so that the statutes can be "read together and harmonized."  The references Henry identifies in the theft chapter involving § 13-2310 regard only peripheral matters, such as the county bad check fund established in A.R.S. § 13-1811 and subpoenas of bank records provided for in A.R.S. § 13-1812, not elements of the crime.  Such references do not indicate a legislative intent to limit § 13-2310 to theft crimes.  And the legislature did not direct anywhere in § 13-2310 that any elements of fraudulent scheme and artifice be defined by the theft

7

chapter. Ultimately, had the legislature intended the inextricable union between the theft and organized crime chapters that Henry urges, it presumably would have clearly said so.

¶17 Pertinent case law also supports our decision. Although no state case addresses whether sexual gratification qualifies as a benefit under § 13-2310, we find illuminating our supreme court's decision in *Haas*. There, the court addressed the scope of the language in § 13-2310 pertaining to fraud. Although it did not address what qualifies as a benefit, the court concluded, in overriding the defendant's attempt to limit the scope of § 13-2310:

> The statute proscribes conduct lacking in "fundamental honesty [and] fair play . . . in the general and business life of members of society." In the final analysis, we adopt a broad view of the statute because no other view is sensible. The definition of "fraud" must be broad enough to cover all of the varieties made possible by boundless human ingenuity.

*Haas*, 138 Ariz. at 424, 675 P.2d at 684, *quoting Blachly v. United States*, 380 F.2d 665, 671 (5th Cir. 1967) (citation omitted) (alteration in *Haas*).

¶18 The holding in *Haas* would be undermined by observing a broad definition of some language in § 13-2310 while prescribing a limited scope to other language. If the legislature had intended § 13-2310 to "be broad enough to cover all of the varieties made possible by boundless human ingenuity," *Haas*, 138 Ariz. at 424, 675 P.2d at 684, then it did not intend to confine the definition of "benefit" to include only pecuniary gain. Certainly, the present case illustrates the assortment of fraudulent invention that, in the interest of preserving "'fundamental honesty [and] fair play . . . in the general and business life of members of society,'" can only be proscribed by a broad interpretation of § 13-2310. *Haas*, 138 Ariz. at 424, 675 P.2d at 684, *quoting Blachly*, 380 F.2d at 671. Accordingly, we conclude the spirit of § 13-2310, as expressed in *Haas*, is

8

preserved only by giving "meaning to every word," *Pitts*, 178 Ariz. at 407, 874 P.2d at 964, and including sexual gratification in these circumstances within the definition of "benefit."

¶19　　　　We also find guidance in case law from other jurisdictions. In *Guam v. Camacho*, 103 F.3d 863 (9th Cir. 1996), the court interpreted a criminal official misconduct statute that precluded a public official from committing an unauthorized act relating to the official's duties "'with the intent to benefit himself or another person . . . or to deprive another person of a benefit.'" *Camacho*, 103 F.3d at 865, *quoting* 9 Guam Code Ann. § 49.90(a). A "benefit" under the statute was defined, in pertinent part, as "'any gain or advantage or anything regarded by the beneficiary as gain or advantage.'" *Camacho*, 103 F.3d at 866, *quoting* 9 Guam Code Ann. § 49.10(a).

¶20　　　　The defendant, a public official carrying out his official duties, had fondled a young girl and was charged with violating the official misconduct statute. Although the defendant argued that the statute was intended to apply to pecuniary matters, the court responded: "This contention ignores the language of the statute, which is much broader than Camacho suggests." *Id*. at 866. In further analysis, the court observed: "That [the defendant] performed this action with the intent to benefit himself is inferable from its patently sexual nature." *Id*. And, ultimately, the court concluded: "'Benefit' is broad enough to encompass . . . sexual titillation . . . . When [the defendant] caressed [the victim] . . . with sexual intent[,] it was an unauthorized exercise of an official function benefiting him . . . ." *Id*.

¶21　　　　As the court in *Camacho* concluded on the statute before it, we believe that, in light of the legislative history, the statutory language, and the holding in *Haas*, § 13-2310 "is much broader than [Henry] suggests" and that "'[b]enefit' is broad enough to encompass . . . sexual titillation." *Camacho*, 103 F.3d at 866.

9

¶22      Other cases interpreting statutes prohibiting a public official from improperly obtaining a "benefit" have reached like results. *See People v. Feerick*, 714 N.E.2d 851 (N.Y. 1999) ("benefit" in official misconduct statute N.Y. Penal Law § 195.00, defined as "any gain or advantage" in N.Y. Penal Law § 10.00(17)), and *People v. Abranko*, 599 N.Y.S.2d 447 (Crim. Ct. 1993) (public official charged with official misconduct under N.Y. Penal Law § 195.00 for sexual touching); *State v. Gove*, 875 P.2d 534 (Or. Ct. App. 1994) ("benefit" includes sexual gratification); *State v. Moffitt*, 801 P.2d 855 (Or. Ct. App. 1990) (same); *cf. State v. Wellington*, 663 P.2d 496 (Wash. Ct. App. 1983) (defendant criminally liable under theft statute for promising, in defendant's words, "benefits" of a sexual nature and then declining to perform any such "benefits" upon payment). Although, as Henry points out, the statutes involved in *Camacho* and these other cases are of a different nature than § 13-2310, these cases illustrate that defining "benefit" to include sexual gratification is not anomalous nor outside the scope of the statute as intended by the legislature. Further, we disagree with Henry that the rule of lenity requires us to interpret § 13-2310 more restrictively than the legislature intended. *See State v. Fell*, 203 Ariz. 186, ¶10, 52 P.3d 218, ¶10 (App. 2002) (doubts about statutory construction resolved in favor of defendant).

¶23      Nevertheless, if we accept the state's position, Henry foresees a "slippery slope" where a broad range of noncommercial and intangible benefits may become the bases for criminal prosecution. He likens the state's position to criminalizing a "practical joke[] gone awry" and the "'benefit' of laughter" attending it. But the context of Henry's scheme was commercial, a face cream survey and sample application, and not the type of noncommercial activity that troubles Henry. And the legislature has defined numerous sexual offenses, *see*, *e.g.*, A.R.S. §§ 13-1403, 13-1404, 13-1410, and has taken sexual motivation into consideration in defining other crimes and

defenses. *See*, *e.g.*, A.R.S. § 13-1407 (lack of sexual motivation a defense to certain crimes). Henry has not pointed out any statute criminalizing practical jokes. We need not decide the maximum reach of § 13-2310 today, but only that Henry's conduct falls within the legislative intent.

¶24 Henry also claims the court was "without jurisdiction" to make a finding that the offense had been sexually motivated, which he defines as a "feeling, fully self-contained." But a judge or jury is often asked to determine what occurred in a defendant's mind, such as whether a defendant acted with premeditation, with a particular intent or knowledge, or with sexual motivation. *See*, *e.g.*, A.R.S. §§ 13-105(9), 13-118, 13-1101, 13-1105. The court here had "jurisdiction" to determine whether Henry had acted out of sexual motivation and had received sexual gratification.

¶25 Having concluded that sexual gratification qualifies as a benefit under § 13-2310, we return to Henry's claim that substantial evidence did not support his conviction. Henry operated a pornographic website on which he charged visitors money to view photographs of females with semen on their faces. He paid some females up to $100 per hour to willingly pose for such photographs. Henry approached the victims claiming to be conducting a face cream survey and offered them $10 each to have "facials." The victims testified that they had scheduled an appointment with Henry believing they were participating in a legitimate face cream survey and would, in fact, receive a facial. The evidence supports the conclusion that, with the victims' eyes covered or closed, Henry ejaculated on C.'s face and took photographs, in a manner resembling the subterfuge he had employed with M. two years before. No evidence showed that Henry was associated with any legitimate face cream enterprise.

¶26     Construed in a light supporting the conviction, *see Riley*, the evidence supporting the conviction is substantial. *See Carlos*. The jury could infer beyond a reasonable doubt that, pursuant to a scheme to defraud and through false pretenses, Henry had obtained a benefit through sexual gratification or by an intent to post photographs of C. on his website for profit while paying her substantially less than he did consenting models. *See* § 13-2310(A); *Fulminante*; *Garza*; *Sabalos*. Henry points out there was no evidence C.'s photograph was ever posted on his website. But the benefit need be prospective only. *See* § 13-105(2). And, although Henry argues, by analogy to A.R.S. § 13-1802, that the jury was required to find the value of the benefit obtained by the fraudulent scheme, the portion of § 13-2310 under which Henry was convicted contains no such requirement. Accordingly, the trial court did not abuse its discretion in denying Henry's Rule 20 motion. *See Carlos*.

## DISPOSITION

¶27     We affirm Henry's conviction and sentence.

_____
JOSEPH W. HOWARD, Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Presiding Judge


_____
M. JAN FLÓREZ, Judge

12