NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LEIGHTON LIONELL WARD, *Appellant.*

No. 1 CA-CR 18-0629
FILED 2-27-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201700817
The Honorable Richard D. Lambert, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza Ybarra
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans, Aaron Michael Demke
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Joshua Rogers[1] delivered the decision of the Court, in which Acting Presiding Judge David D. Weinzweig and Judge Peter B. Swann joined.

---

**R O G E R S,** Judge:

¶1        Leighton Lionell Ward appeals his convictions and sentences for two counts of fraudulent schemes and artifices, one count of theft, eight counts of forgery, four counts of preparing false documents for filing, and three counts of recording a false document.

### FACTS[2] AND PROCEDURAL BACKGROUND

¶2        Ward, who refers to himself as "[F]ull colon Leighton hyphen Lionell colon Ward[,]" specializes in grammar syntax, which he applies to contracts and other documents to correct their false and misleading statements. He does so, he claims, by assigning numerical values to the documents' text and extracting the code. The result, according to Ward, is that the documents' grammar becomes "mathematically correct," thus illustrating that the uncorrected documents have no legal effect. Ward offers his services to clients, promising to correct documents such as deeds of trust, which he then uses as "forensic evidence of [fraud]" to support lawsuits he files against lenders in a fictitious Federal Postal Court ("FPC").[3]  There, he obtains final default judgments, which he forwards to the Department of Justice and other federal agencies for enforcement.

---

[1]        The Honorable Joshua Rogers, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]        Upon review, we view the facts in the light most favorable to sustaining the jury's verdicts and resolve all inferences against Ward. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

[3]        According to Ward, the FPC "handles cases specifically in regarding to the laws of grammar. [I]t's a foreign court."  Ward claims he is the appointed clerk of the FPC.

¶3            The Murphys, a married couple, were experiencing financial difficulties when Ward sent them a letter explaining he could erase their home mortgage and obtain $12,000,000 from the government for them. The Murphys paid Ward $3,295 and sent him "mortgage papers and . . . the deed of trust to the property." After the Murphys received notice from the Department of Justice denying their claim because it "is incomprehensible in its use of an unintelligible syntax language[,]" Ward told the Murphys, "[A]ll is well." The Murphys demanded a refund based on Ward's "100 percent money back guarantee," which Ward did not honor.

¶4            Meanwhile, Tony Kovacevic and his business partner Waylon Gates purchased a home at a trustee sale. They then commenced an eviction action in justice court against the home's previous owners who remained in the home as tenants. The tenants and Ward were friends. Ward informed Kovacevik that "no one is touching [the tenants'] property . . . . What [the lender/trustee] and the attorneys have done to you and my long-time high school friend [tenant] pisses me off to no end." Ward clouded the home's title by filing, on different dates, numerous "syntaxed" documents with the county.

¶5            Ward also obtained a copy of the loyalty oath signed by the justice of the peace who initially presided over the eviction action. Ward made several corrections to the oath: he stamped it with an FPC filing stamp, "syntaxed" it, and he provided a website address to view a "FRAUDULENT-DUTY-JUDGES-OATH-VIDEO" that illustrated how he "syntaxed" the oath. Ward also printed the justice of the peace's home address on the first page and mailed her a copy. Ward recorded the revised oath with the county.

¶6            The State charged Ward with 19 offenses, alleging groups of them were committed on five separate dates. The jury found him guilty of two counts of fraudulent schemes and artifices, one count of theft, eight counts of forgery, four counts of preparing false documents for filing, and three counts of recording a false document, but not guilty of one count of deceptive business practices (Count 3). The trial court sentenced Ward to time served for the three misdemeanor counts of recording a false document (Counts 8, 12, and 16).

¶7            As for the remaining counts, the court ordered as follows: Count 1, fraudulent schemes and artifices and Count 2, theft, (Group 1) to be served concurrently; Count 4, fraudulent schemes and artifices, Count 5, forgery, Count 6, forgery, and Count 7, preparing false documents for filing, (Group 2) to be served concurrently to each other, but consecutive to

Group 1; Count 9, forgery, Count 10, forgery, and Count 11, preparing false documents for filing, (Group 3) to be served concurrently to each other, but consecutive to Group 2; Count 13, forgery, Count 14, forgery, and Count 15, preparing false documents for filing, (Group 4) to be served concurrently to each other, but consecutive to Group 3; and Count 17, forgery, Count 18, forgery, and Count 19, preparing false documents for filing, (Group 5) to be served concurrently to each other, but consecutive to Group 4. Based on the multiple offenses not committed on the same occasion, the trial court found Ward was a category 1 repetitive offender for Group 2 and a category 2 repetitive offender for Groups 3 through 5. Considered together, Ward's prison terms total 23.5 years. Ward appeals.

## DISCUSSION

I.      THE TRIAL COURT DID NOT VIOLATE WARD'S RIGHT TO REPRESENT HIMSELF.

**¶8**          At his initial appearance and arraignment, Ward waived his right to counsel. Seven months later, the trial court granted the State's motion to revoke Ward's self-representation, and the court appointed counsel. Ward argues the court thereby violated his right to represent himself. We review for abuse of discretion. *State v. Gomez*, 231 Ariz. 219, 222, ¶ 8 (2012).

**¶9**          "The right to counsel under both the United States and Arizona Constitutions includes an accused's right to proceed without counsel and represent himself, . . . but only so long as the defendant is able and willing to abide by the rules of procedure and courtroom protocol." *Id.* at ¶ 8 (internal citations and quotation marks omitted).

**¶10**         The record reveals that during the seven months Ward represented himself he repeatedly ignored the trial court's admonishments to communicate in a comprehensible fashion. Instead of complying with the court's orders, Ward persisted to use his "syntax" language in numerous unintelligible "kites" to the court and in making meaningless oral arguments, and he otherwise continued to disrupt proceedings. Ward also failed to cooperate with mental health experts appointed by the court to determine his competency to stand trial.[4] *See* Ariz. R. Crim. P. 11. Because of Ward's disruptive behavior, the court did not abuse its discretion in revoking his self-representation and appointing counsel. *See*

---

[4]      According to the record, Ward communicates in standard English when it benefits himself to do so.

*Gomez*, 231 Ariz. at 223, ¶ 15 (noting trial court "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct") (quoting *Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975)).

## II. SUFFICIENT EVIDENCE SUPPORTS WARD'S CONVICTION OF FRAUDULENT SCHEMES AND ARTIFICES (COUNT 4).

**¶11** Ward challenges the sufficiency of evidence supporting one of his convictions for fraudulent schemes and artifices (Count 4). Specifically, Ward argues there was insufficient evidence that he received a benefit by filing documents related to the eviction action in justice court.[5]

**¶12** We review a claim of insufficient evidence *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Sufficient evidence may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate" to "support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987). In evaluating the sufficiency of the evidence, we test the evidence "against the statutorily required elements of the offense." *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005).

**¶13** A person commits fraudulent schemes and artifices if he, "pursuant to a scheme or artifice to defraud, knowingly obtains *any benefit* by means of false or fraudulent pretenses, representations, promises or material omissions[.]" A.R.S. § 13–2310 (emphasis added). "'Benefit' means anything of value or advantage, present or prospective." A.R.S. § 13–105(3). The benefit obtained is, therefore, broadly defined and not restricted to direct pecuniary gain. *State v. Henry*, 205 Ariz. 229, 233, ¶ 15 (App. 2003).

**¶14** At a minimum, by clouding the title, Ward obtained a benefit for his friends to live in the foreclosed home for three more months. Gates testified that the tenants remained in the foreclosed home for three months longer than a tenant typically does when the trustee sale involves property

---

[5] At trial, Ward admitted he created and filed the documents underlying Count 4 and the other charges.

with clear title.[6]  A reasonable jury could also conclude Ward's obstruction of the foreclosure process assuaged his anger resulting from his friends losing their ownership of the home.  *See id*. at 233, ¶ 13 (concluding a defendant's sexual gratification qualifies as a benefit under § 13–2310).  We therefore reject Ward's assertion that insufficient evidence supports his conviction for Count 4.

III.    THE TRIAL COURT DID NOT ADMIT EVIDENCE IN VIOLATION OF ARIZONA RULES OF EVIDENCE 403 AND 404(B).

**¶15**        Ward argues the trial court erred in allowing the State to introduce evidence during rebuttal that showed Ward never succeeded in obtaining money for clients via his "syntax grammar" scheme.  Ward contends the rebuttal evidence constituted improper other-act evidence under Rule 404(b) that was also unduly prejudicial under Rule 403.  Ward did not object to the State's evidence at trial; thus, we review for fundamental error.  *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

**¶16**        Ward's argument is without merit.  He admitted at trial that the State's evidence was admissible to rebut his direct testimony that his clients' claims succeed, and the "correct sentence structure lawsuit[s]" "get paid."  Because of Ward's testimony, the State could properly introduce rebuttal testimony by investigators who located several of Ward's clients locally and throughout the United States and found no one whose "claim" resulted in a monetary settlement.  *See State v. Cook*, 172 Ariz. 122, 124–25 (App. 1992) (upholding the admission of otherwise inadmissible testimony when the defendant opened the door, making the evidence "highly relevant and admissible," and the testimony was "elicited solely for the purpose of rebutting" the misimpression created by the defendant).  No error, fundamental or otherwise, occurred. *See Escalante*, 245 Ariz. at 142, ¶ 21 (first step in fundamental error review is determining whether error occurred).

IV.    THE TRIAL COURT DID NOT ERR BY FAILING TO SUBMIT THE FINDING OF MULTIPLE OFFENSES NOT COMMITTED ON THE SAME OCCASION TO THE JURY.

**¶17**        Ward contends the trial court should have required the jury to determine whether the groups of offenses relating to the five separate

---

[6]        We recognize that the terms "foreclosure" and "trustee sale" technically refer to distinct legal transactions. Nevertheless, as the parties did at trial, we use them interchangeably.

dates were not committed on the same occasion. Because the court did not do so, Ward argues his sentences were improperly enhanced under the repetitive offender statute. *See* A.R.S. § 13–703(A). Ward did not object to the State's pre-trial notice both that the offenses alleged in specific counts were committed on occasions separate from the other offenses with different dates and thus "there is no need for a specific finding by the jury if inherent in the verdict." Accordingly, Ward is not entitled to relief absent fundamental error.

¶18 Although enhanced sentencing based on a defendant's multiple convictions generally requires a jury to find the offenses were committed on different occasions, that specific finding is unnecessary if it is inherent in the verdicts. *State v. Flores*, 236 Ariz. 33, 35, ¶ 5 (App. 2014). Here, the indictment *and the verdict forms* listed the date for each offense. Thus, by finding him guilty, the jury determined that each date Ward committed offenses constituted an occasion different from the dates of the other groups of offenses. *See id.* at 35–36, ¶¶ 7–9 (where verdict forms indicate jury found defendant guilty of offenses "as alleged" in indictment, which in turn specified different dates in each count, the jury implicitly found the facts necessary to determine defendant committed the offenses on separate occasions). We therefore find no error, let alone fundamental error, in Ward's enhanced sentences.[7]

## V. WARD'S SENTENCE DOES NOT VIOLATE THE PROHIBITION AGAINST MULTIPLE PUNISHMENTS.

¶19 Finally, Ward argues his sentence violates the prohibition against double punishment. *See* A.R.S. § 13–116 ("An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent."). We reject this argument. The record reflects Ward received concurrent sentences for those offenses committed on the same dates. The trial court imposed consecutive sentences only for groups of offenses that occurred on dates different from the other groups of offenses. Because the offenses that were committed on different dates were separate acts, *State v.*

---

[7] Ward concedes that his conviction on Count 4 was unnecessary to "move Counts 9–19 (excluding the misdemeanors) into a category two sentencing range." We therefore need not address whether Count 4's allegation of a date range, rather than a specific date, somehow amounted to fundamental error. *See Escalante*, 245 Ariz. at 142, ¶ 21 (defendant has burden to establish fundamental error resulted in prejudice).

*Bush*, 244 Ariz. 575, 596, ¶ 92 (2018), A.R.S. § 13–116 does not apply to require concurrent sentences.

¶20 Alternatively, Ward argues Count 4 alleges a date range that includes the specific dates alleged in Counts 5-19, and thus his sentences for Count 4-19 should run concurrently. Inconsistently, Ward also argues Count 4's sentence should run concurrently with the sentences imposed for Groups 3, 4, and 5 (i.e., Counts 9-19). Ward does not properly develop this argument, nor does he provide supporting authority; thus, we refuse to address it. *See State v. Moody,* 208 Ariz. 424, 452, ¶ 101 n. 9 (2004) ("In Arizona, opening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised.") (quoting *State v. Carver*, 160 Ariz. 167, 175 (1989)); *State v. Sanchez*, 200 Ariz. 163, 166, ¶ 8 (App. 2001) (issue waived because defendant failed to develop argument in opening brief).

**CONCLUSION**

¶21 Ward's convictions and sentences are affirmed.

