NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JESUS BUSSO-ESTOPELLAN, *Appellant.*

No. 1 CA-CR 20-0496
FILED 6-2-2022

Appeal from the Superior Court in Maricopa County
No. CR2011-133622-001
The Honorable Jay R. Adleman, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee*

The Stavris Law Firm PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

**C A M P B E L L**, Judge:

¶1        Jesus Busso-Estopellan appeals his convictions and sentences for two counts of first-degree murder and one count of misconduct involving weapons. For the following reasons, we vacate the misconduct involving weapons conviction but otherwise affirm.

## BACKGROUND

¶2        While seated in a parked car, Tim and his friend, Oliver, were approached by a young, Hispanic man who shot them both in the head and then fled on foot.[1] Despite being severely injured, Tim called 9-1-1 and provided a description of the assailant.

¶3        By the time police officers arrived at the scene a few minutes later, Oliver had died. Though still conscious when emergency responders transported him to a hospital, Tim later succumbed to his injuries as well.

¶4        Shortly after attending to the victims, police officers recovered their cell phones. While scanning Oliver's phone, an officer found a series of texts that Oliver had exchanged during the hour preceding the murders. The texts reflected that Oliver had planned to meet the recipient of his texts at the location where the shooting occurred, and that the recipient had arrived at the meeting place ten minutes before Tim called 9-1-1.

¶5        Later, a detective obtained a court order (the Order) to retrieve subscriber and cell-site location information (CSLI)[2] from the

---

[1]        We use pseudonyms to protect the victims' privacy.

[2]        "Cell phones perform their wide and growing variety of functions by connecting to a set of radio antennas called 'cell sites.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2208 (2018). "Each time [a] phone connects to a cell site, it generates a time-stamped record known as cell-site location information (CSLI)." *Id.*

cellular telephone provider and wireless carrier for the phone number associated with the texts (the Target Phone). In his application for the Order, and consistent with the statutes authorizing such an order, the detective avowed that the requested information was "relevant and material to the ongoing investigation," a standard that is lower than the probable cause required for a search warrant. *See* 18 U.S.C. § 2703(d); A.R.S. § 13-3016(B)(3); *Carpenter*, 138 S. Ct. at 2221 (noting that the standard "'relevant and material to an ongoing investigation' . . . falls well short of the probable cause required for a warrant").

¶6             When law enforcement officers received the subscriber information and related CSLI subject to the Order, they discovered that the Target Phone was in the immediate area of the shooting at the time the victims were murdered and that it was registered to Busso-Estopellan. The next day, officers arrested Busso-Estopellan as the suspected shooter. While officers interviewed him at a police station, other officers searched his home pursuant to a search warrant. During his interview, Busso-Estopellan confessed to the murders and directed the officers to look in a dumpster where he hid the gun used to shoot the victims. Explaining he had brokered a drug deal between Oliver and a third party a few months before the shooting, Busso-Estopellan claimed he "had to" kill Oliver because the third party was threatening him. Police subsequently obtained another warrant to retrieve information, including CSLI, regarding a phone number associated with the third party, as indicated on Busso-Estopellan's cellphone.

¶7             The State charged Busso-Estopellan with two counts of first-degree murder and one count of misconduct involving weapons, alleging he, a Mexican national, was in the United States unlawfully at the time of the murders. *See* A.R.S. §§ 13-3101(A)(7)(e) (providing generally that an "undocumented alien or a nonimmigrant alien" is a "prohibited possessor"), -3102(A)(4) ("A person commits misconduct involving weapons by knowingly . . . [p]ossessing a deadly weapon . . . if such person is a prohibited possessor[.]"). The State also filed a notice of its intent to seek the death penalty and alleged multiple aggravating factors.

¶8             Before trial, Busso-Estopellan moved to suppress information obtained pursuant to the Order, arguing the police violated his Fourth Amendment rights and Arizona law by procuring the cellular phone information without a search warrant. He did not request an evidentiary hearing, and after considering the parties' pleadings and other submissions, the superior court found Busso-Estopellan lacked a reasonable expectation of privacy in the challenged information and denied the motion.

**¶9** A jury found Busso-Estopellan guilty as charged. The jurors also found an aggravating factor for each count of murder, making Busso-Estopellan eligible for the death penalty. The jury could not agree on the appropriate sentence, however, resulting in a mistrial during the penalty phase of the trial. The State eventually withdrew its intent to seek the death penalty, and the superior court imposed consecutive natural life sentences for the first-degree murder convictions. The court also imposed a 2.5-year prison term for the weapons offense to be served concurrently with the initial life sentence. Busso-Estopellan timely appealed.

## DISCUSSION

### I.        Motion to Suppress

**¶10** After Busso-Estopellan's trial in this matter, but before sentencing, the United States Supreme Court held in *Carpenter*, for the first time, that the Fourth Amendment generally requires a search warrant supported by probable cause to obtain historical CSLI from a wireless carrier. 138 S. Ct. at 2221. Busso-Estopellan argues that the Order was not a search warrant, and therefore, under *Carpenter*, the superior court erred by denying his motion to suppress.

**¶11** As an initial matter, the State concedes that the warrant requirement enunciated in *Carpenter* applies to the superior court's ruling in this case. *See State v. Towery*, 204 Ariz. 386, 389, ¶ 6 (2003) (explaining that new constitutional rules apply retroactively to cases on direct review). We agree.

**¶12** In *Carpenter*, the Supreme Court determined that individuals have a legitimate expectation of privacy in their "physical movements as captured through CSLI[,]" and therefore the government's acquisition of CSLI constitutes a search under the Fourth Amendment. 138 S. Ct. at 2217. Accordingly, applying *Carpenter*, the superior court erred in finding Busso-Estopellan did not have a reasonable expectation of privacy in the CSLI.

**¶13** Nonetheless, we must affirm the superior court's ruling on any legal ground supported by the record. *State v. Fuentes*, 247 Ariz. 516, 522, ¶ 15 (App. 2019). After the United States Supreme Court issued *Carpenter*, the Arizona Supreme Court addressed whether CSLI evidence obtained pre-*Carpenter* pursuant to an order like the Order here should have been suppressed. *State v. Smith*, 250 Ariz. 69 (2020). Noting that "[c]ourts have consistently applied the good-faith exception to CSLI orders issued prior to *Carpenter*," the supreme court affirmed the superior court's denial of a suppression motion. *Id*. at 81-82, ¶¶ 24-28. As the supreme court

made clear, because the good-faith exception to the exclusionary rule applied, it was "irrelevant" that the CSLI order did not satisfy the "more stringent standards for obtaining search warrants." *Id*. at 81, ¶ 28; *see also State v. Hyde*, 186 Ariz. 252, 273 (1996) ("[E]vidence obtained in objective good faith reliance on a faulty search warrant should not be suppressed.").

¶14 While acknowledging substantial limits to the application of the exclusionary rule, Busso-Estopellan argues that the good-faith exception does not insulate the CSLI obtained pursuant to the Order because the police knew they lacked a good-faith basis for requesting the Order when they sought it. To support this contention, Busso-Estopellan points to subsequent efforts by police to obtain a "traditional search warrant supported by probable cause" when they sought CSLI related to the third-party's phone records, including "a complete duplicate" of Busso-Estopellan's phone records.

¶15 We reject this argument for two reasons. First, Busso-Estopellan cites no supporting authority. Second, and more importantly, the record does not reflect that law enforcement officers sought the subsequent warrant to remedy any Fourth Amendment deficiency associated with the Order. Instead, the record reflects that the police used the Order to investigate the identity of the person with whom Oliver texted immediately before the shooting. Then, after Busso-Estopellan confessed to the murders, police sought the warrant to investigate whatever connection the third party had to the shootings.

¶16 Because police initially obtained CSLI for Busso-Estopellan's phone pursuant to a pre-*Carpenter* court order, and, in applying for the Order, reasonably relied on A.R.S. § 13-3016's authorization of warrantless searches of CSLI, we conclude that the good-faith exception to the warrant requirement applied. Therefore, the superior court did not abuse its discretion in denying Busso-Estopellan's motion to suppress. *See State v. Gay*, 214 Ariz. 214, 217, ¶ 4 (App. 2007) (denial of motion to suppress reviewed for abuse of discretion).

¶17 Given our resolution of this issue, we need not address the superior court's determination that, based on the subsequent warrant, police would have inevitably discovered the CSLI for Busso-Estopellan's cell phone. We also summarily reject Busso-Estopellan's contention that the Order violated Article 2, Section 8, of the Arizona Constitution. *See Smith*, 250 Ariz. at 82, ¶¶ 32-33 (rejecting Article 2, Section 8 challenge to similar order because warrantless search did not involve defendant's home and

was otherwise subject to the good-faith exception to the warrant requirement).

## II.        Count 3: Motion for Judgment of Acquittal

**¶18**        Busso-Estopellan argues that the superior court erred by denying his motion for judgment of acquittal regarding the misconduct involving weapons charge (Count 3). *See* Ariz. R. Crim. P. 20(a)(1) ("After the close of evidence on either side, and on motion or on its own, the court must enter a judgment of acquittal on any offense charged in an indictment, information, or complaint if there is no substantial evidence to support a conviction."). We review the denial of a Rule 20 motion de novo. *State v. Bible*, 175 Ariz. 549, 595 (1993).

**¶19**        As noted, the State alleged in Count 3 that Busso-Estopellan was in the United States unlawfully on or about the date of the murders. In its brief, the State asserts that documents found in Busso-Estopellan's car after his arrest demonstrated his unlawful status. Those documents included: (1) an Arizona marriage certificate issued to Busso-Estopellan and his wife in 2010; (2) Busso-Estopellan's Mexican birth certificate; (3) Busso-Estopellan's Mexican identity card that expired in 2013; (4) Busso-Estopellan's "border crossing card" that expired in 2006; and (5) paperwork showing that, a few months before the murders, Busso-Estopellan was released on bond pending a deportation hearing. But none of those documents demonstrated that Busso-Estopellan was in the country unlawfully at the time of the offenses. At most, the evidence of his release only indicated he was *allegedly deportable*.

**¶20**        The State also relies on Busso-Estopellan's statement during his police interview that he was "working on [his] residency right now" when asked whether he was a United States citizen. That statement did not establish Busso-Estopellan's unlawful presence in the country. Although Busso-Estopellan's response could imply he was not a United States citizen, the case agent also testified that individuals who are not United States citizens may nonetheless be lawfully present in the country, and residency is not the only means to establish lawful presence.

**¶21**        We conclude that the foregoing failed to provide a sufficient basis for determining, beyond a reasonable doubt, that Busso-Estopellan was unlawfully in the Unites States at the time of the offenses. *See State v. Henry*, 205 Ariz. 229, 232, ¶ 11 (App. 2003) ("Substantial evidence, which may be either circumstantial or direct, is evidence that a reasonable jury can accept as sufficient to infer guilt beyond a reasonable doubt."). The superior

court, therefore, erred by denying the motion for judgment of acquittal regarding Count 3. Accordingly, we vacate Busso-Estopellan's conviction for misconduct involving weapons and the resulting sentence.

### III.        Mistrial Motion

**¶22**        During the penalty phase of trial, Busso-Estopellan moved for a mistrial, alleging the prosecutor engaged in misconduct during the proceeding by intimidating witnesses. Busso-Estopellan challenges the superior court's denial of the motion.

**¶23**        We do not address this issue because it is moot. *See Star Publ'g. Co. v. Bernini*, 228 Ariz. 490, 492, ¶ 3 (App. 2012) (explaining this court typically does not address moot issues). The penalty phase otherwise resulted in a mistrial based on the jury's inability to agree unanimously on a sentence, and the State thereafter withdrew its notice of intent to seek the death penalty. *See State v. Lambright*, 243 Ariz. 244, 253, ¶ 28 (App. 2017) ("Because the trial court declared a mistrial when the jury could not reach a verdict on whether to sentence [the defendant] to death, whether the trial court had erred in admitting . . . testimony during the aggravation phase of that resentencing trial is moot.").[3]

---

[3]        Anticipating possible relief in "subsequent post-conviction proceedings," Busso-Estopellan asks this court to preclude the State from seeking the death penalty in a future retrial. Busso-Estopellan's double jeopardy concerns regarding a possible resentencing are speculative at best, and his request to resolve the issue in this appeal is premature. *See Arpaio v. Figueroa*, 229 Ariz. 444, 448, ¶ 14 (App. 2012) (explaining an appellate ruling on a premature issue results in an "advisory opinion," which is "anticipative of troubles [that] do not exist; may never exist; and the precise form of which, should they ever arise, we cannot predict (internal quotation marks and citation omitted)).

## CONCLUSION

**¶24** For the foregoing reasons, we vacate Busso-Estopellan's misconduct involving weapons conviction and the resulting sentence. We affirm, however, the first-degree murder convictions and life sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA